BERLON W. KEMP

*v.*

STATE COMPENSATION DIRECTOR, AND
UNITED STATES STEEL CORP.

(No. 12320)

Submitted April 29, 1964.  Decided June 2, 1964.

HAYMOND, JUDGE, not participating.

*Dayton, Campbell & Love, George W. S. Grove, Jr.,* for appellant.

*R. L. Theibert,* for appellee.

BROWNING, JUDGE:

This is an appeal from a final order of the workmen's compensation appeal board of January 15, 1964, affirming an order of the director of workmen's compensation directing the payment of benefits to the claimant, upon a temporary total disability basis, for the period from October 22, 1962, to February 28, 1963, inclusive. The claimant was injured January 3, 1961, his injury being described as a "back strain", while lifting a caterpillar drive sprocket. On March 21, 1961, the injury was held to be compensable and the claimant was paid benefits upon a temporary total disability basis through November 27, 1961, when the attending physician recommended that he be examined for a permanent partial disability rating. Claimant was referred to Dr. E. L. Gage, who, as a result of an examination made on December 12, 1961, recommended a permanent partial disability rating of 5%. However, on January 26, 1962, the director authorized vocational rehabilitation training under the provisions of Code, 23-4-9, as amended. Under that authorization the

claimant entered an art school about February 1, 1962, and received instruction at that place until approximately the first of May, of that year, when, upon the complaint of the claimant that he was continuing to have pain in the region of his back, the director authorized surgery of that portion of his body by Dr. E. L. Gage of Bluefield, and such operation was performed by Dr. Gage on June 18, 1962.

Following surgery, the claimant was discharged from the Bluefield Sanitarium on June 25, 1962, and on June 28, Dr. Gage reported to the director, in part, as follows: "Despite the fact that I was rather loathe to operate on him we had fiddled around with this man so long and he was making so much fuss that I finally operated on him 6-18-62 doing a partial hemilaminectomy bilaterally at L 4 and 5. No herniated intervertebral disc or other distinct abnormality was found. The only possible explanation for any nerve root pain was a relatively large vessel beneath the 4th lumbar nerve root which might conceivably have pulsated enough to give him a little discomfort. This vessel was coagulated." The report of Dr. Gage further states that the patient made an uneventful recovery from the operation and he suggested that if there were further complaints by the claimant that he "should be treated by a psychiatrist." Dr. Gage discharged the claimant as physically able to return to his former employment on September 21, 1962. The employer is a self-insurer under the provisions of Code, 23-2-9, as amended, and, upon the issuance of a "pay order" by the director, paid the claimant upon a temporary total disability basis through September 20, 1962, and the claim was closed.

Thereafter, on October 22, 1962, the claimant began a training course in drafting at the rehabilitation center at Institute, West Virginia, which it was estimated would take about twelve months to complete. It is clear from the record that not only was no notice given the employer of the fact that the claimant was receiving training at Institute, but it also appears that not even the director knew of that development of the case until the director was so

advised by letter of the claimant's attorney, dated February 18, 1963, requesting that claimant's benefits be adjusted from October 22, 1962, and thereafter continued until completion of the course, the letter being accompanied by a medical report of Dr. Harold H. Kuhn who stated, in part, that the claimant "would be unable to do heavy work in a coal mine in his present condition." It would appear from the record that the statement in Dr. Kuhn's report that the claimant had an "Old ruptured disc, excised, with unstable back and continued sciatic neuralgia," was based upon the history given to him by the claimant, but a perusal of the medical report of Dr. Gage not only does not sustain such history but is completely contrary to it. In other words, Dr. Gage neither found nor remedied the condition which Dr. Kuhn described in his report.

Upon receipt of the letter the director, without the entry of a formal order, issued a "pay order" directing the employer to pay to the claimant the sum of $645.00 representing benefits from October 22, 1962, through February 28, 1963. The employer returned the "pay order", protesting such payment and a hearing was held on June 21, 1963, at Welch. However, no evidence was taken at that hearing and the claim was submitted to the director for decision upon the record, the salient portions of which have heretofore been stated. On September 5, 1963, the director affirmed his earlier decision, there was an appeal to the workmen's compensation appeal board and, on January 15, 1964, the board affirmed the order of the director to which action this Court granted an appeal as heretofore stated.

A decision of the issues presented by this record requires a careful examination of the provisions of Code, 23-4-9, as last amended by Chapter 160, Acts of the Legislature, Regular Session, 1961. That section provides as follows:

> "In cases where an employee has sustained a permanent disability, or has sustained injuries likely to result in permanent disability, and such

fact has been determined by the commissioner, and the employee can be physically and vocationally rehabilitated and returned to remunerative employment by vocational training, by the use of crutches, artificial limbs, or other approved mechanical appliances, or by medicines, medical, surgical, dental or hospital treatment, the commissioner shall forthwith, after due notice to the employer, expend such an amount as may be necessary for the aforesaid purposes, not, however, in any case, to exceed the sum of twelve hundred dollars. No payment, however, shall be made for such purposes as provided by this section unless authorized by the commissioner prior to the rendering of such treatment.

"In every case in which the commissioner shall order physical or vocational rehabilitation of a claimant as provided herein, the claimant shall, during the time he is receiving any vocational rehabilitation or rehabilitative treatment that renders him totally disabled during the period thereof, be compensated on a temporary total disability basis for such period, unless he is being paid compensation under an award granted prior to the time such rehabilitation is authorized by the commissioner."

It will be noted that "no payment" shall be made for rehabilitative purposes unless authorized by the commissioner "prior to the rendering of such treatment." Code, 23-4-16, as amended, provides in part that "The power and jurisdiction of the director over each case shall be continuing and he may from time to time, after due notice to the employer, make such modifications in the findings or orders as may be justified." Code, 23-5-1, as amended, after reciting the power and authority of the director, provides that "upon the making or refusing to make any award, . . . the commissioner [now director] shall give notice, in writing, to the employer, . . . of his action, which notice shall state the time allowed for the filing an objection to such finding", which is thirty days, and if there is no objection to such finding within that period the order becomes final. It will be observed that Code, 23-4-9, as amended, heretofore quoted, makes no provision as to the right of an employer to protest or the time

within which he may protest to an order of the director either reopening a claim for payment to a claimant or continuing payment theretofore ordered, while such claimant is receiving training of a vocational rehabilitative nature. However, it is the view of this Court, and we so hold, that these sections must be read together and that Section 9 does not give the director the authority to make payments of compensation to a claimant without giving the employer an opportunity to object thereto, and, to repeat, Section 9 specifically requires "due notice to the employer".

This employer had no notice, due or otherwise, of the fact that its former employee, the claimant herein, was receiving vocational training until several months after that training began. It is clear from this record that the first time the employer had any notice that any further action had been taken in the claim was when it received the "pay order" on or about February 28, 1963. That pay order provided for retroactive payments to the claimant for the period October 22, 1962, through February 28, 1963. It is the contention of counsel for the claimant that the employer was fully advised of the vocational rehabilitative training which the claimant had and was receiving and knew or should have known that Section 9 provided for payment of compensation upon a temporary total disability basis in such cases; however, it is clear from the record, and not contended otherwise by counsel for the claimant, that the employer did not receive any of this information until months after the claimant had begun such training. Forsooth, not even the director himself was informed of this development until months after the claimant had begun such training. It is not necessary for this Court, in the decision of this case, to answer every question that may be posed by the facts herein, but the Court does hold that under the provisions of Chapter 23, heretofore quoted, the employer was entitled to "notice" of what had transpired prior to receiving the "pay order" and that the employer was within his rights under the statute in returning the pay order within thirty days after its receipt and protesting the reopening of the claim

and the payment of compensation benefits from October to February as heretofore stated. Inasmuch as the employer had no such notice, did not agree to or waive the action of the claimant in beginning a course of vocational training, or of the payment of compensation to the claimant during such training, it is not bound thereby and cannot be required to make such payments to the claimant as directed by the director in such "pay order".

The order of the workmen's compensation appeal board of the 15th day of January, 1964, is reversed and the claim will be remanded to the board and to the director.

*Reversed and remanded.*