409 So.2d 1201 (1982)
Carolyn A. WALKER, Appellant/Cross-Appellee,
v.
NEW FERN RESTORIUM and R. P. Hewitt & Associates of Florida, Inc., Appellees/Cross-Appellants.
No. ZZ-53.
District Court of Appeal of Florida, First District.
February 18, 1982.
Ivan Matusek, St. Petersburg, for appellant/cross-appellee.
Robert P. Byelick, St. Petersburg, for appellees/cross-appellants.
JOANOS, Judge.
This workers' compensation appeal concerns the procedural and evidentiary requirements *1202 of a claim for rehabilitation benefits under the 1979 amendments to § 440.49(1), Florida Statutes.[1] After a hearing on the claim, the deputy denied rehabilitation benefits on the ground that the program in which the claimant was currently enrolled was not that envisioned by § 440.49(1). We reverse.
It is apparent from the record that many of the difficulties which the claimant encountered in her quest for rehabilitation were due in large part to the lack of familiarity by the parties with the Division of Workers' Compensation ["Division"] statute. Hopefully, this opinion will serve to set forth the procedures and responsibilities under the new act which, if followed, will help prevent recurrence of the delay and confusion that took place in this case.
Claimant sustained a low back sprain on August 16, 1979 while working for the employer as a nurse's aide. Claimant's physician opined that, as a result of the injury, claimant should be restricted from lifting over 20 pounds and from prolonged bending or stooping, even after reaching MMI. The evidence is uncontradicted that with these restrictions, work as a nurse's aide would not be appropriate. Although claimant received an associate of arts degree in 1957 and has done occasional work as a housekeeper, factory worker, and kindergarten instructor, after claimant was advised that she should no longer work as a nurse's aide, claimant sought rehabilitation to enable her to work at a less strenuous occupation.
The employer paid the proper temporary disability benefits but did not voluntarily provide rehabilitation services for claimant. The Division, however, was not immediately notified by any of the parties that claimant desired rehabilitation. Instead, claimant first asked for help from the Division of Vocational Rehabilitation of the Florida Department of Health and Rehabilitation Services ["DVR"]. DVR received reports from physicians and a psychiatrist and concluded that claimant suffered a disability interfering with her employment. After concluding that claimant was entitled to rehabilitation, a counselor from DVR began working with claimant to determine a viable rehabilitation program.
It appears from the evidence that the Division was first notified of claimant's interest in rehabilitation by either claimant's attorney or the DVR counselor. In any event, a Division rehabilitation nurse contacted claimant on January 14, 1980. Claimant was hesitant to talk with the nurse but finally discussed her educational and work background. Because workers' compensation disability claims were being controverted at the time, the nurse testified that the Division was not supposed to "get involved." The Division did no further *1203 work on the case until March 14, 1980, when claimant called the nurse to inform her that the disability portion of the case had been settled and to ask the nurse "what we [the Division] were going to do with her." The nurse then called the claimant's DVR counselor to discuss the case. Shortly thereafter, claimant's attorney contacted the Division to formally refer claimant for rehabilitation services. The nurse made two or three more phone contacts with the claimant but did not devise any rehabilitation plan. Although claimant was not very co-operative on several occasions, the nurse testified that she "closed the case" because she was told that a private rehabilitation agency hired by the employer was supposed to come in. The nurse admitted that under the new law the Division was required to monitor rehabilitation, yet the Division took no further action (either monitoring or preparing reports) once it learned of the possible involvement of a private agency.
As the case developed, no private agency ever became involved. In the meantime, however, the claimant and her DVR counselor continued to work on formulating a rehabilitation program. Because claimant's experience and interest were in the medical field, the DVR counselor testified that she and claimant decided a four-month training program as a ward clerk would be appropriate. (A ward clerk performs light secretarial/clerical duties in a medical setting.) Claimant attended the training program at night while, on her own initiative, she was enrolled in a basic course of studies at a junior college during the day. As part of her counseling, the DVR counselor also recommended that claimant try the Florida State Employment Service. Claimant did, and got a job as a telephone solicitor. After one day, she found the experience very upsetting. The rehabilitation counselor agreed that the job was not suitable for claimant considering her interest and background.
At the hearing on the claim for rehabilitation benefits, the deputy heard testimony from, among others, the claimant, her treating physician, the DVR counselor and a Division rehabilitation nurse. Although the rehabilitation nurse testified that she "would not disagree with" the DVR's choice of rehabilitation programs, the deputy found that the ward clerk program was "not that envisioned in section 440.49... ." In order to have reached this conclusion, the deputy could have determined that the requirements of § 440.49(1) were not met in that, (1) the injury did not preclude claimant from earning pre-accident wages, (2) the ward clerk program was not "necessary and appropriate to restore the employee to suitable gainful employment," or (3) the program should be rejected due to procedural deficiencies. We find that the deputy's conclusion cannot be sustained on any of the three grounds.
The first two grounds involve evidentiary matters, and, utilizing the findings of fact made by the deputy, the evidence would not support rejection of the program on either of these grounds. The deputy accepted medical testimony regarding claimant's restrictions and the evidence is undisputed that work as a nurse's aide is not appropriate in light of these restrictions. In addition, the claimant's DVR counselor testified without contradiction that the program was designed to correspond with claimant's experience in the medical field, would be suitable for her restrictions, and would return her to her pre-injury wage earning capacity. The claimant stated that she would like to become a ward clerk, and the Division rehabilitation nurse agreed that this was an appropriate goal.
The employer has argued that claimant's limited job search and short-lived work as a telephone solicitor should preclude her recovery of rehabilitation benefits. The record reflects, however, that telephone solicitation was the only job located for claimant by the employment service, that the job was one intended for more severely handicapped persons, that there is no evidence as to the rate of pay for the job, and that claimant did attempt the work. To refuse rehabilitation benefits because of the availability of any employment, *1204 no matter how ill-suited to the particular individual, would be counter to the statutorily expressed goal of rehabilitation  to return the individual to "suitable gainful employment." § 440.49(1)(a) (emphasis supplied). The suitability of the employment is determined by considering the claimant's injury, age, education, and prior occupation. In light of the claimant's prior experience and education, the telephone solicitation job had nothing to recommend it.
With regard to the procedural difficulties, in subsection (1)(a) of § 440.49, the statute sets forth the correct procedure under which an injured employee may obtain rehabilitation. Ordinarily, rehabilitation should be provided voluntarily by the employer or carrier when the injured employee is no longer able to earn pre-injury wages. Where, as in this case, the employer/carrier refuses to voluntarily accept responsibility for rehabilitation, the Division of Workers' Compensation must be notified by either the employer, the carrier, or the claimant. Once notified of the claimant's application for rehabilitation, the Division takes over the responsibility for evaluating whether or what type of rehabilitation should be received. After giving the parties an opportunity to be heard, the Division should refer the claimant to a qualified physician or facility for the purpose of determining "the practicality of, the need for, and the kind of service, treatment, or training necessary and appropriate to restore the employee to suitable gainful employment." A report setting forth the findings and recommendations of the evaluating physicians or facilities must be prepared by the Division and sent to the deputy commissioner. On receipt of the report, the deputy must afford the parties with an opportunity for a hearing and may order the employer/carrier to provide the treatment recommended in the report or other necessary rehabilitation. Once rehabilitation has been ordered, training or treatment may be provided in cooperation with other federal, state, or private agencies which work in the area of vocational education or rehabilitation. The ultimate responsibility, however, remains with the Division, which must oversee the effectiveness of each rehabilitation program.
Unfortunately, the parties did not precisely follow the procedures set forth in § 440.49(1)(a) and the Division, in essence, abdicated its statutory responsibility to a fellow state agency, the Department of Vocational Rehabilitation. Despite the improprieties, however, we find that claimant was in substantial compliance with the statute and that the failure of the Division to fulfill its duties did not result in any prejudice to the employer. The employer was given an opportunity to present evidence at the hearing concerning the necessity and appropriateness of claimant's rehabilitation program. Even though the deputy did not receive a written report from the Division, he heard testimony from claimant's treating physician, from a DVR counselor, and from a Division nurse. In addition, the DVR counselor testified that claimant had been examined by physicians and a psychiatrist before DVR's funding for rehabilitation was approved. The Division's failure to accept its responsibilities and file its own report should not prevent an award of rehabilitation where the deputy is presented with essentially the same evidence that he would have received in a Division report.
On cross-appeal, the employer/carrier challenges the deputy's finding that the claimant did not have to receive a permanent impairment rating as a prerequisite to an award of rehabilitation benefits. We agree with the deputy that the new act now focuses on the concept of wage loss rather than disability ratings. See Larson, The Law of Workmen's Compensation, Volume 2, § 57.15. Unlike the old statute, which provided for rehabilitation only "in cases in which it appears the disability will be permanent," the new act only requires that an injury "preclude the employee from earning wages equal to wages earned prior to the injury." In this case, the doctor stated that claimant had reached MMI and was now restricted from certain activities which the evidence showed would result in a wage loss. Since MMI is not achieved while there is still an expectation of recovery, it can be *1205 inferred that the limitations on claimant would permanently affect her wage earning capacity. This evidence is sufficient to meet the statutory criteria without the necessity of a permanent impairment rating.
REVERSED and REMANDED for further proceedings consistent with this opinion.
ERVIN and WENTWORTH, JJ., concur.
NOTES
[1] Section 440.49(1)(a) provides:

(1) Rehabilitation of injured employees. 
(a) When an employee has suffered an injury covered by this chapter and its appears that the injury will preclude the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The employer or carrier, at its own expenses, shall provide such injured employee with appropriate training and education for suitable gainful employment and may cooperate with federal and state agencies for vocational education and with any public or private agency cooperating with such federal and state agencies in the vocational rehabilitation of such injured employees. For purposes of this section only, "suitable gainful employment" means employment or self-employment which is reasonably attainable in light of the individual's age, education, previous occupation, and injury and which offers an opportunity to restore the individual as soon as practical and as nearly as possible to his average weekly earnings at the time of injury. If such services are not voluntarily offered or accepted, the Division of Workers' Compensation of the Department of Labor and Employment Security, upon application of the employee, employer, or carrier, after affording the parties an opportunity to be heard, may refer the employee to a qualified physician or facility for the evaluation of the practicality of, the need for, and the kind of service, treatment, or training, necessary and appropriate to restore the employee to suitable gainful employment. On receipt of such report, and after affording the parties an opportunity to be heard, the deputy commissioner may order that the service and treatment recommended in the report, or such other rehabilitation treatment or service deemed necessary, be provided at the expense of the employer or carrier.