413 So.2d 822 (1982)
HURRICANE FENCE INDUSTRIES and Maryland Casualty Company, Appellants,
v.
Wallace L. BOZEMAN, Appellee.
No. AD-488.
District Court of Appeal of Florida, First District.
May 6, 1982.
*823 David A. Simpson, Smith, Grimsley, Remington, Kessler & Simpson, Fort Walton Beach, for appellants.
Roderic G. Magie, Levin, Warfield, Middlebrooks, Mabie & Magie, Pensacola, for appellee.
LARRY G. SMITH, Judge.
The primary issue presented here is one of jurisdiction and authority, on the part of a deputy commissioner, to order rehabilitation benefits in behalf of a worker's compensation claimant. Specifically, is a request, either by the employee, employer, or the carrier, to the Division of Worker's Compensation,[1] for a referral for evaluation of the claimant's need, etc., for rehabilitation as provided by Section 440.49(1)(a), Florida Statutes (1979), a necessary condition precedent to the award of rehabilitation benefits by the deputy commissioner under the new (1979) Workers' Compensation Act?[2] The deputy commissioner answered this question in the negative, and awarded rehabilitation. We affirm.
After his injury, the claimant continued to work for the employer until he received knee surgery in March, 1980.[3] When he *824 attempted to return to work for the employer, he found that his job was filled. In his employment as an estimator for the fence company owned by the employer, he occasionally was required to walk over rough terrain to gather the necessary information to complete his estimate, and he customarily engaged in other physical labor in connection with his job. At the hearing, the claimant testified that he doubted he could continue such work because of his knee condition. The claimant contacted the State Vocational Rehabilitation Service, which helped enroll him in a meat cutting school in Chipley, Florida, which is normally a thirty-six week training course, and paid his tuition.[4] The claimant moved from Pensacola to Chipley in order to be near the school. He sought part-time employment in Chipley, but was unable to find employment he could do because of his injured knee.
The deputy commissioner pointed out in his order that after the claimant made arrangements to attend this school in Chipley, the employer offered him a job. The deputy ruled that this offer of employment "came too late." Further, the deputy commissioner found that the claimant's efforts to rehabilitate himself were reasonable and necessary under the circumstances, and that the carrier had made no effort to assist his rehabilitation, although the claimant was entitled to such benefits.
Our review convinces us that the deputy commissioner's findings and conclusions on the rehabilitation issue are supported by the record.[5] The evidence from the claimant, undisputed, discloses that he contacted the carrier seeking rehabilitation as early as October, 1980. He was informed that he was not eligible for rehabilitation because he did not have a back injury. A month later, he again contacted the carrier, informing the carrier of his intention to attend the school in Chipley. Again, he was told that he was not eligible. Apparently the carrier made no effort to communicate the claimant's rehabilitation requests to his employer, nor to explain the claimant's possible eligibility for such benefits, and the employer/carrier's obligation to provide them. The employer's first notice that rehabilitation benefits were being claimed apparently came by letter about the middle of December, 1980. The employer was not sure, but his guess was that it came from the Division of Vocational Rehabilitation (Florida Department of Health and Rehabilitation Services).
The employer/carrier argue that rehabilitation benefits are not available to a *825 claimant unless he has first made application to the Division of Worker's Compensation for referral "to a qualified physician or facility for the evaluation of the practicality of, the need for, and the kind of service, treatment, or training, necessary and appropriate to restore the employee to suitable gainful employment." Section 440.49(1)(a), Florida Statutes (1979). We disagree. Although the procedural step spelled out in the statute is the "correct procedure," as recently announced by this court in Walker v. New Fern Restorium, 409 So.2d 1201 (Fla. 1st DCA 1982), the absence of a Division report was not found to be a jurisdictional impediment to rehabilitation in Walker, nor is it here. Cf. Bailey v. Hawes Chrysler-Plymouth, 410 So.2d 986 (Fla. 1st DCA 1982), opinion filed March 15, 1982, affirming denial of rehabilitation benefits where the employee had not applied to the division for evaluation.
Our determination of the jurisdictional issue calls for examination of the specific language of the 1979 rehabilitation statute, as well as its predecessor. Former Section 440.49, repealed effective July 1, 1979,[6] contained a provision limiting the authority of the deputy commissioner to award rehabilitation benefits. The repealed provision (Section 440.49(1), Florida Statutes (1978 Supp.)) provided in part:
However, no judge of industrial claims shall assume jurisdiction to approve or disapprove rehabilitation under this provision until the Division has been given reasonable time to evaluate the injured worker and advise all parties as to the rehabilitation program it may propose if said rehabilitation program is to be funded out of the fund established by s. 440.50... .
Under the pre-1979 statute, rehabilitation was funded out of the Special Disability Trust Fund, rather than by direct payments by the employer/carrier. Under this prior law, a judge of industrial claims (now deputy commissioner) could not assume jurisdiction to award rehabilitation benefits unless he had first received an evaluation report from the Division advising as to the rehabilitation program proposed for the claimant. Hall v. Red Bishop Roofing, 393 So.2d 618 (Fla. 1st DCA 1981); Keith v. City of Altamonte Springs, 344 So.2d 555 (Fla. 1976).
No such limitation upon the jurisdiction or authority of the deputy commissioner appears in the 1979 version of Section 440.49, which provides that rehabilitation must be provided by the employer or carrier, at its own expense. Upon application, under the 1979 amendment, the Division "may" refer the employee "to a qualified physician or facility for the evaluation of the practicality of, the need for, and the kind of service, treatment, or training, necessary and appropriate to restore the employee to suitable gainful employment." Upon receipt of a report of such evaluation, the deputy commissioner "may" order the service or treatment recommended in the report, or, the deputy may order "such other rehabilitation treatment or service deemed necessary," to be provided at the expense of the employer or carrier. Section 440.49(1)(a).
The new act's increased emphasis upon rehabilitation, and liberalization of the prerequisites for eligibility on the part of the claimant is evident.[7] The former statute, Section 440.49 (1978 Supp.), provided for rehabilitation in cases "in which it appears that disability probably will be permanent ...." The 1979 amendment eliminates the requirement of "permanent" disability, and provides for eligibility when "it appears that the injury will preclude the employee from earning wages equal to wages earned prior to the injury... ." Section 440.49(1)(a), Florida Statutes (1979).
It appears from the foregoing that while application to the Division for referral to a physician or facility for evaluation is contemplated by the new law, if rehabilitation is "not voluntarily offered or accepted," *826 nowhere is there any indication that such an application is a jurisdictional prerequisite to the receipt of rehabilitation benefits by the claimant. Any other interpretation of the new statutory language would be contrary to the self-executing concept firmly embodied (now even more so) in the workers' compensation law, and inconsistent with the wording of the statute. The language that the Division "may refer" the employee for evaluation is permissive, not mandatory, and this provision further incorporates the permissive form in the provision that the deputy commissioner "may order" that the recommended treatment or service be provided. The additional language of subsection (1)(a), authorizing the deputy commissioner to order "such other rehabilitation treatment or service deemed necessary," particularly when read in conjunction with the other subsections ((1)(b)-(f)), unquestionably confers upon the deputy commissioner the authority to award or decline to award the recommended treatment, or to award service or treatment even though not recommended in the report. We adhere, however, to the Walker opinion's directives concerning the desired procedure to be followed.[8]
Having disposed of the jurisdictional issue adversely to appellants' position, we turn now to the circumstances of this case. We observe, initially, that the amended rehabilitation provision, with respect to "application" to the Division, does not differentiate between applications by the employee, employer, or the carrier. All are given equal right under the statute to apply to the Division for assistance in evaluating the rehabilitation needs of the employee, if rehabilitation is "not voluntarily offered or accepted." We interpolate here that implicit in the concept of voluntary offer and acceptance of rehabilitative services is the notion that both the E/C and the claimant may make their own investigation as to the need for and suitability of a rehabilitation program. In this case, as above pointed out, the claimant's desire for rehabilitation was made known to the carrier, and later, to the employer. Both did nothing. Either could have invoked the very statutory provision they now contend the claimant should have used, and no doubt would have used  judging from his successful efforts to obtain assistance through the state's rehabilitative resources  if he had been so instructed. Had the E/C applied to the Division, presumably the Division's response and the resulting evaluation report would have been the same, regardless of the applicant. The report would thus have been available to whichever party it might have benefited, and the testimony of the examining physician or other expert could have been presented in support of, or in defense of, the claim for rehabilitation.
The employer and carrier, having failed to avail themselves of the services of the Division, or to inform claimant of their insistence upon his following the procedure outlined in the statute, cannot now urge the claimant's failure to do so as a defense to his rehabilitation claim.[9] Moreover, the E/C's contention that they were prejudiced by noncompliance with the "notice" provisions of the statute is without merit. The Division was not asked to take official action, and it took none. As for notice of the claimant's efforts to obtain rehabilitation, *827 aside from the notification to both already alluded to, appellee's claim which was filed with the Division on December 17, 1980, specifically claimed rehabilitation in the form of the meat cutting program he was enrolled in, together with temporary total disability compensation during the period of training required. The pretrial stipulation and order also made the claim for rehabilitation the primary issue to be determined. Notwithstanding, the employer and carrier offered no evidence to refute the claimant's contention that he was in need of rehabilitation, and at no time did the employer or carrier request an evaluation by the Division of Workers' Compensation, or by any physician or other facility concerned with rehabilitative needs.
Although we can appreciate the chafing effect this decision might have upon the employer, and others similarly situated, we hasten to point out that the failure of the employer or the carrier, or both, to become sufficiently informed so as to properly understand the self-executing nature of the worker's compensation law, and the increased responsibilities imposed upon them by the recent legislation, cannot be raised in defense of an otherwise meritorious claim. The facts of this case all too obviously reveal the lack of communication by the carrier with the employer, and a lack of concern by the employer until such time as the prospect of economic detriment presented itself. Then it was "too little  too late." The rehabilitation features of the workers' compensation law now in effect call for "prompt" rehabilitation services.[10] A "do nothing" approach on the part of the employer and carrier is no longer a viable alternative.
AFFIRMED.
MILLS and SHAW, JJ., concur.
NOTES
[1] Florida Department of Labor and Employment Security.
[2] Chapters 79-40, 79-312, Laws of Florida (1979). The 1979 revision of Section 440.49, subsections (1)-(7), inclusive, for the first time in Florida elevated rehabilitation services to the category of benefits to which the eligible injured worker "shall be entitled." It also mandated the provision of such services by the employer or carrier, at their expense, on a voluntary basis, provided for intervention by the Division in event such services are not voluntarily offered or accepted, and imposed a mandatory reduction of benefits payable to the employee upon refusal to accept rehabilitation "as deemed necessary by the deputy commissioner." By contrast, the repealed revision of Section 440.49 merely authorized rehabilitative assistance by the Division, did not require the employer or carrier to provide rehabilitation, and made the reduction in benefits a matter within the discretion of the judge of industrial claims.
[3] The injury occurred November 12, 1979. After surgery claimant's recovery was slow. Dr. Cameron, claimant's treating physician, thought he should be able to return to light work in August, 1980; however, in November, 1980, claimant had to be re-hospitalized for manipulation of his knee under anesthesia. MMI was reached on December 26, 1980, with a 10% permanent partial impairment of the lower right extremity. The doctor advised avoidance of heavy labor, or work in an occupation requiring climbing or squatting.
[4] The claimant testified that he consulted with Mrs. Lakie Johnson about the advisability of attending the school, as well as with Mrs. Chasarik. Mrs. Johnson was identified as the "rehabilitation nurse" working out of Tallahassee, and Mrs. Chasarik was identified as the "rehabilitation nurse" working out of Pensacola. He also talked with Phil Jacobs, whom he identified as being with the Department of Vocational Rehabilitation. Although the testimony is not crystal clear concerning the official status of the "rehabilitation nurses" (the claimant was not represented by counsel at the hearing), reasonable inferences from the record, including the testimony of Lakie Johnson, indicate that she was employed by the Department of Labor and Employment Security. Mrs. Johnson, called as a witness by the claimant, testified in response to inquiries by the deputy commissioner that she was contacted by the claimant and that she found the meat-cutting school for him. When asked if she had referred the claimant to any type of training to restore him to gainful employment, she answered: "[W]e should have but we didn't... . I didn't write a report... ." In explanation of her failure to follow-up in claimant's case, she stated that she had assumed that her co-worker, Mrs. Chasarik, would "pick up the case." She further stated that she "thought," but was not sure, that she told the claimant to contact the Department of Vocational Rehabilitation.
[5] While the evidence is susceptible to conflicting inferences and interpretations on the issue of whether it "appears" that claimant's injury would preclude him from earning wages equal to wages earned prior to the injury, we cannot say that the deputy commissioner committed reversible error on this point. The claimant, who did not have the benefit of counsel at his hearing, was subjected to searching examination and cross-examination by the deputy commissioner and the employer/carrier's counsel, and it is apparent from the record that the deputy commissioner fully considered the evidence and the arguments advanced by appellees and resolved the issue in favor of the claimant.
[6] Section 23, Chapter 78-300, Laws of Florida (1978).
[7] See, Sadowski, Herzog, Butler and Gobel, The 1979 Florida Workers' Compensation Reform: Back To Basics, 7 Florida State University Law Review 641, 652-653, 673 (1979).
[8] The purposes of the new provisions dealing with application to the Division are reflected in Chapter 38F-8, Florida Administrative Code, "Workers Compensation Rehabilitation," e.g., Rule 38F-8.02, which provides, in part: "However, it is the responsibility of the Division of Workers' Compensation, operating through its Bureau of Rehabilitation, to identify those injured workers who are entitled to or may benefit from rehabilitation, to insure that proper rehabilitation is being made available to them, to assist them with the necessary professional guidance injured workers often require in order to prepare them for rehabilitation, and to monitor their progress once in a rehabilitation program."
[9] The statutory entitlement to "prompt" rehabilitation places the burden of affirmative action on the employer or carrier, consistent with the act's general scheme of insuring that an injured claimant is properly notified as to benefits available. See, e.g., Sections 440.185(2), (3), 440.185(10), Florida Statutes (1979); Dan's Plumbing and CNA Insurance v. Smith, 410 So.2d 941 (Fla. 1st DCA 1982), opinion filed January 28, 1982.
[10] As a further indication of the emphasis upon the requirement of promptness in providing rehabilitation, Rule 38F-8.02, "Workers Compensation Rehabilitation," provides, in part: "Rehabilitation services shall be commenced at such time that the health of the eligible individual permits, regardless of whether maximum medical improvement has been reached." This provision disposes of appellants' contention that the claimant's rehabilitation efforts were premature in this case.