790 A.2d 764

**Jasen C. ARNSTROM**

v.

**EXCALIBUR CABLE COMMUNICATION, LTD., et al.**

**No. 0319 Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Feb. 5, 2002.

Robert J. Zarbin (Harvey A. Kirk and Saiontz, Kirk & Miles, P.A., on the brief), Baltimore, for appellant.

Adam Daniel Metz, Towson, for appellees.

Argued before DAVIS, LAWRENCE F. RODOWSKY and WILLIAM W. WENNER (retired, specially assigned), JJ.

LAWRENCE F. RODOWSKY, Judge, retired, specially assigned.

In this workers' compensation case the insurer denied coverage. Thereafter the claimant undertook and completed vocational rehabilitation before the Workers' Compensation Commission (the Commission), the employer, or the insurer learned that any services had been rendered. The question presented is whether this lack of notice, in and of itself, excuses the insurer from paying the reasonable costs of the vocational rehabilitation services.

Jasen C. Arnstrom (Arnstrom), the appellant, was injured in an automobile accident on January 24, 1995. In February he filed a claim with the Commission alleging that the accident arose out of and in the course of his employment by one of the appellees, Excalibur Cable Communication, Ltd. That company's insurer, Injured Workers Insurance Fund (IWIF), raised, *inter alia*, the issue of whether Arnstrom was an independent contractor. The compensation claim did not come on for hearing before the Commission until July 1998.

Meanwhile, in April 1996, on his own initiative, Arnstrom applied for vocational rehabilitation with the Division of Rehabilitation Services (DORS), a division of the State Department of Education. Maryland Code (1978, 1999 Repl.Vol.), § 21–304(a) of the Education Article (ED).[1] According to a letter of June 25, 1997, from DORS to Arnstrom's counsel, DORS "provided and/or paid for the following services: disability assessment, guidance and counseling, training, and rehabilitation technology evaluation." DORS also "approved" the purchase of equipment and software. The cost of the equipment, rehabilitative services, and administrative expenses approximated $55,000. In October 1997 Arnstrom started his own telecommunications business in which he continues to be suitably and gainfully employed.

In December 1997 Arnstrom raised with the Commission issues of medical expenses and temporary total disability, but did not claim reimbursement on behalf of DORS. At the hearing in July 1998 the Commission found that Arnstrom's injury was compensable, awarded temporary total disability benefits to December 31, 1996, and awarded temporary partial disability benefits from January 1, 1997, to October 5, 1997.

---

1. COMAR, Title 13A, "State Board of Education," Subtitle 11, "Programs for Adults with Disabilities," Chapter 01, "Vocational Rehabilitation Services," provides in § 13A.11.01.04A that "[a]n individual may apply for vocational rehabilitation services by contacting [DORS] directly or upon referral by individuals, organizations, public or private agencies, and other sources."

Arnstrom raised the issue of permanent partial disability with the Commission in December 1999, and in February 2000 he supplemented that issue by claiming, for the first time, reimbursement for DORS.[2] At a hearing in March 2000 the Commission awarded permanent partial disability benefits, but it deferred ruling as to the reimbursement of DORS.

The deferred issue was decided on June 27, 2000, following a hearing which was essentially a legal argument. At that hearing IWIF told the Commission the following:

> "Oh, I think clearly he's entitled to vocational rehabilitation services and I have—and I have no basis to complain about the ultimate result. The concern is the expense of the result and whether under the supervision of the Commission and/or under the oversight of [IWIF], had we had knowledge that this much expense would have been involved—."

IWIF further said that "[t]he complaint [is] that we would not have spent this much money." There was no testimony that the rehabilitative services by or through DORS were unnecessary or that the cost of those services was unreasonable. The Commission ordered IWIF to reimburse DORS.

IWIF sought judicial review in the Circuit Court for Charles County. Cross motions for summary judgment were filed. At the hearing on those motions IWIF told the court, in part, as follows:

> "There's not any complaint other than the fact that the Commission did not comply with its own statute and own rules, and I think an administrative body . . . is required to

---

2. The State Board of Education Article of COMAR provides that an applicant for vocational rehabilitation services "shall participate annually in the cost of vocational rehabilitation services[.]" COMAR § 13A.11.01.10A. This regulation is subject to certain exceptions. See § 13A.11.01.10B. In addition, the amount of financial participation by an applicant is calculated by a means test. § 13A.11.01.10C through H. The record in the instant matter is silent on whether, or to what extent, Arnstrom will be liable to DORS if DORS is unable to obtain reimbursement through Arnstrom from IWIF.

comply with its own rules. This agency did not do so . . . and that decision cannot be permitted to stand."

The circuit court granted summary judgment in favor of IWIF, essentially on the ground that Arnstrom's failure to comply with the procedure set forth in Maryland Code (1991), § 9–673 of the Labor and Employment Article (LE) caused him to lose his entitlement to vocational rehabilitation services.

LE § 9–673 in relevant part provides:

"(a) *Referral to provider; obtaining plan.*—The Commission shall:

"(1) refer a covered employee who is entitled to vocational rehabilitation services under § 9–672 [3] . . . to an appropriate vocational rehabilitation provider; and

"(2) obtain . . . a vocational rehabilitation plan. . . .

. . . .

"(c) *Notice.*—On receipt of a vocational rehabilitation plan, the Commission promptly shall give written notice of the contents of the plan to each party.

"(d) *Hearing.*—(1) Within 15 days after the day of written notification by the Commission of the contents of the vocational rehabilitation plan, any party in interest may request a hearing to contest the plan.

"(2) At the hearing, the parties may present additional evidence as necessary.

"(3) After the hearing, the Commission shall:

"(i) wholly or partly accept or reject the vocational rehabilitation plan; and

"(ii) pass an appropriate order about vocational rehabilitation of the covered employee."

---

3. LE § 9–672(a) provides:

"When a covered employee is disabled from performing work for which previously qualified as the result of an accidental personal injury or an occupational disease, the covered employee is entitled to vocational rehabilitation services."

Arnstrom appealed to this Court from the reversal of the Commission's order.

The parties correctly have identified the question presented here to be one of statutory construction. Under the familiar rules of statutory construction we seek to ascertain and effectuate the legislative intent, the primary source of which is the language of the statute. The inquiry, however, does not end there necessarily, inasmuch as a statute is to be construed reasonably with reference to its purpose. *Fikar v. Montgomery County*, 333 Md. 430, 434–35, 635 A.2d 977, 979 (1994).

■ The purpose of the notice provisions of LE § 9–673 is to give the insurer the opportunity to question the need for, scope of, and cost of a proposed vocational rehabilitation plan. Because that opportunity was not furnished here, IWIF submits that it has no liability for rehabilitation. In other words IWIF treats compliance with the scheme of § 9–673 as a condition precedent to vocational rehabilitation benefits.

On the other hand, Arnstrom points out that § 9–673 applies only to a "covered" employee, a status which IWIF contested, and that, by the time the coverage issue was resolved, he had completed his vocational rehabilitation. He argues that the Workers' Compensation Act should be construed "to carry out its general purpose." LE § 9–102(a). Those components of vocational rehabilitation that involve "assessment, counseling, job placement, etc .... [which are] provided directly to the beneficiary, are clearly intended to prepare the beneficiary to return to the workplace." *Fikar*, 333 Md. at 438, 635 A.2d at 980. Inasmuch as he successfully returned to the workplace, Arnstrom contends that the purpose of the vocational rehabilitation entitlement conferred by LE § 9–672 has been achieved and that the entitlement should be paid.

### Discussion

The statutes and the rules of the Commission do not expressly impose on a claimant an obligation to seek, within a determinable period of time, a ruling that the claimant's case

is eligible for vocational rehabilitation services. This is undoubtedly due to the fluid nature of the relationship between medical treatment and vocational rehabilitation. One commentary has said:

> "Most commonly, vocational rehabilitation is not an issue until the claimant has achieved, or almost achieved, maximum medical improvement. Courses of treatment might fall short of a physician's expectations. For a variety of reasons operations might prove to be less than successful. The delay in implementing vocational rehabilitation does nothing more than prolong the time that a claimant is out of the workplace. The rehabilitation process should be initiated while medical treatment is on-going rather than awaiting the claimant's complete recuperation."

R.P. Gilbert & R.L. Humphreys, Jr., *Maryland Workers' Compensation Handbook* § 9.0–4.2, at 191 (2d ed. 1993) (Gilbert & Humphreys).

LE § 9–673, on which IWIF relies, does not require the claimant to initiate the process therein set forth; rather, that statute places the obligation on the Commission to identify covered employees whose cases are appropriate for vocational rehabilitation ("The Commission shall ... refer"). The statutes further contemplate that cases where a covered employee is a suitable candidate for vocational rehabilitation also will be identified for the Commission by the insurer. See LE § 9–675. That section reads:

> "(a) *1st report.*—When a covered employee has received temporary total disability benefits continuously for 6 months, the insurer or self-insurer shall submit to the Commission a vocational rehabilitation progress report on the form that the Commission requires.

> "(b) *Further reports.*—After submitting a report under subsection (a) of this section, the insurer or self-insurer shall submit further vocational rehabilitation progress reports to the Commission every 120 days or sooner as requested by the Commission.

"(c) *Failure to submit report.—Fine.*—If the Commission finds that an insurer or self-insurer has failed to submit a report within the time period required by this section, the Commission may impose a fine not exceeding $500 on the insurer or self-insurer."

Gilbert & Humphreys observe that LE § 9–675 presents, with respect to vocational rehabilitation, "[t]he one temporal requirement which practitioners should note[.]" § 9.0–4, at 190 n. 16.

That the obligation is on the Commission to identify claimants whose cases are appropriate for vocational rehabilitation services is confirmed by ED § 21–307. That section reads:

"(a) *Administration of program.*—The State Board of Education and the State Workers' Compensation Commission shall administer jointly the program established in this section.

"(b) *Program established.*—The State Workers' Compensation Commission:

"(1) Shall establish a rehabilitation program;

"(2) May employ the necessary rehabilitation counselors and clerical staff to review all reports and claims;

"*(3) Shall select from the reports and claims filed with it those for which rehabilitation services appear to be appropriate;*

"(4) After proper investigation, shall refer appropriate cases to [DORS];

"(5) On request of [DORS], shall make available to [DORS] a complete medical evaluation, including a prognosis of work potential of any worker whose case it refers to [DORS]; and

"(6) Shall pay the salaries of the employees of the workers' compensation rehabilitation program and all necessary expenses incurred:

"(i) In investigating and reviewing all reports and claims; and

"(ii) For supplies, furniture, and office space.
(Emphasis added).[1]

At the time of Arnstrom's injury, while he was receiving vocational rehabilitation services, and when the order appealed from was entered on June 27, 1998, the Commission's rule dealing with vocational rehabilitation was former COMAR § 14.09.01.20. See 18 Maryland Register 1188 (May 3, 1991). In relevant part this rule provided:

"C. The rehabilitation evaluation agency to which the claimant is referred shall send copies of its reports to all parties. Parties may controvert a report only when it is accompanied by a statement from the Rehabilitation Office indicating that the report constitutes a plan of rehabilitation or a recommendation against rehabilitation. A party desiring to controvert a proposed rehabilitation plan shall submit a request for a hearing reflecting the controversion to the Rehabilitation Office not later than 15 days from the date of the Commission's notification....

"D. Parties desiring to proceed with private vocational rehabilitation services shall notify the Rehabilitation Office before proceeding. Within 10 days after receiving a report from the private agency, the parties shall file a copy with the Commission."

In the instant matter the record is silent as to the identity of the provider or providers of vocational rehabilitation services to Arnstrom, other than DORS, and on whether any reports were sent. Absent any evidence that Arnstrom even received a report from a "rehabilitation evaluation agency" or from a "private vocational rehabilitation service[ ]," Arnstrom

---

4. Historically the predecessor statutes to current ED § 21–307 provided from 1960 to 1993 that the Commission should refer all cases appropriate for vocational rehabilitation to DORS "within sixty days after the date of injury, or as soon thereafter as it is possible under the circumstances." See Chapter 111 of the Acts of 1960, codified in Md.Code (1957, 1965 Repl.Vol.), as Art. 77, § 295(b), in Md.Code (1957, 1969 Repl.Vol.), as Art. 77, § 137(b), and in Md.Code (1978, 1992 Repl.Vol.), as ED § 21–306(b)(4). The sixty day provision was repealed by Chapter 161 of the Acts of 1993.

cannot be faulted for IWIF's not having received any report or for Arnstrom's not having filed a copy of any report with the Commission. Although Arnstrom did not notify the Commission that he "desir[ed] to proceed with private vocational rehabilitation services," (former COMAR § 14.09.01.20D) services rendered by DORS would not be "private." Even if the services arranged by DORS were "private," it is undisputed that Arnstrom's case was appropriate for vocational rehabilitation. Thus, the purpose of notice to the Commission, as provided in former COMAR § 14.09.01.20D, would have been satisfied here.[5]

Absent any express provisions in the statutes or rules conditioning a claimant's entitlement to insurer payment of vocational rehabilitation services on the claimant's having given the insurer or the Commission notice that those services are desired or are being obtained, the question arises whether that condition should be implied. A number of cases involving essentially this same question arose under a statute previously in effect in Florida. Fla Stat. § 440.49(1)(a) (1981) read in part:

> "When an employee has suffered an injury covered by this chapter and it appears that the injury will preclude the

---

**5.** COMAR § 14.09.01.20 was amended effective June 28, 1999. *See* 26 Maryland Register 1020 (June 18, 1999). IWIF argues that the Commission failed to follow this rule, but it is inapplicable.

Under current COMAR § 14.09.01.20 the obligation is on the provider to notify the Commission directly of vocational rehabilitation referrals. See COMAR § 14.09.01.20C(1) ("Upon receipt of a Commission claim number, a provider shall immediately notify the Commission that an injured worker has been referred for vocational rehabilitation services.") and COMAR § 14.09.01.20D(2) ("A provider shall ... [s]ubmit copies of all reports to the Commission, the employer/insurance carrier, and the injured worker's attorney.").

Current COMAR § 14.09.01.20A(2)(a) defines "provider" as "a *person* who provides vocational rehabilitation services." (Emphasis added). It is a *statutory* requirement that any "person" who renders vocational rehabilitation services register with the Commission. See LE § 9–671. For purposes of the Labor and Employment Article "person" is a definitional term which does not include the State. LE § 1–101(d). "State" is separately defined in LE § 1–101(e). Thus DORS would not seem to be a "provider" under the current Commission Rule.

employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services. The employer or carrier, at its own expense, shall provide such injured employee with appropriate training and education for suitable gainful employment.... If such services are not voluntarily offered or accepted, the Division of Workers' Compensation of the Department of Labor and Employment Security, upon application of the employee, employer, or carrier, after affording the parties an opportunity to be heard, may refer the employee to a qualified physician or facility for [ ] evaluation.... On receipt of such report, and after affording the parties an opportunity to be heard, the deputy commissioner may order that the service and treatment recommended in the record, or such other rehabilitation treatment service deemed necessary, be provided at the expense of the employer or carrier." [6]

Under the above-quoted statute, where claimants obtained rehabilitation services without the agreement of the insurer, and without invoking the evaluation procedure described in the statute, the question arose whether the insurer was excused from paying for the services. In *Hurricane Fence Indus. v. Bozeman*, 413 So.2d 822 (Fla.App.1982), the court held that the procedure spelled out in the statute is the " 'correct procedure,' " *id.* at 825, but that "nowhere is there any indication that such an application is a jurisdictional prerequisite to the receipt of rehabilitation benefits by the

---

**6.** The Florida statute has subsequently been amended. Currently Fla. Stat. § 440.491(3)(a) reads as follows:

"(a) When an employee who has suffered an injury compensable under this chapter is unemployed 60 days after the date of injury and is receiving benefits for temporary total disability, temporary partial disability, or wage loss, and has not yet been provided medical care coordination and reemployment services voluntarily by the carrier, the carrier must determine whether the employee is likely to return to work and must report its determination to the division. The carrier must thereafter determine the reemployment status of the employee at 90-day intervals as long as the employee remains unemployed, is not receiving medical care coordination or reemployment services, and is receiving the benefits specified in this subsection."

claimant." *Id.* at 826. *C & H Constr. v. Leyman,* 453 So.2d 1163 (Fla.App.1984), stated the rule to be that "[t]he claimant is not precluded from obtaining services independent of the employer and the Division, but when he does so he obtains those services at the risk he will not persuade the deputy commissioner that those particular services were necessary." *Id.* at 1164. *See also Towne v. Bates File Co.,* 497 So.2d 967, 968 (Fla.App.1986); *City of Miami v. Simpson,* 459 So.2d 326, 329 (Fla.App.1984) (Joanos, J., dissenting). In *Robinson v. Volusia County Council on Aging,* 568 So.2d 55 (Fla.App. 1990), the workers' compensation agency had denied reimbursement for rehabilitation expenses. On review the court affirmed, because the claimant had "offered no proof concerning the reasonableness or necessity of the services." *Id.* at 56. The court recognized, however, that a "claimant can obtain rehabilitation services on her own and run the risk that she will not be able to persuade the [agency] that the services were necessary." *Id.*

The Court of Appeals of Colorado has held that, where "a claimant has established that unauthorized medical treatment or vocational rehabilitation has reduced the degree of permanent partial disability from which the claimant would otherwise have suffered and that the expenses thus incurred are reasonably proportionate to the benefit received, the employer is liable for such unauthorized but reasonable expenses." *Martin K. Eby Constr. Co. v. Industrial Comm'n,* 710 P.2d 1164, 1166 (Colo.App.1985). The court reasoned "that the employer may not disclaim responsibility for the expense of treatment from which it receives benefit." *Id.*

The Supreme Court of Rhode Island, in *Simpson v. Dytex Chem. Co.,* 667 A.2d 1229 (R.I.1995), reversed the compensation agency's denial of reimbursement for college tuition expenses, holding that the agency had applied a statute that was not in effect at the relevant time. The operative statute provided that an " 'employer shall bear the expense of rehabilitative services agreed to or ordered pursuant to this section.' " *Id.* at 1232. The claimant had sought rehabilitation through a state agency other than the workers' compensation

agency, but had failed to give the insurer notice and to afford it an opportunity to respond to the program approved by the rehabilitation agency. The court remanded to the compensation agency "for a determination on the merits of the propriety of the petitioner's rehabilitation program and of subsequent reimbursement of expenses in the event the rehabilitation program is deemed appropriate by the [compensation agency]." *Id.* at 1232.

There are decisions which take a more strict view, but these cases turn on the language of the particular statute. Reimbursement for unilaterally undertaking vocational rehabilitation was denied in *Kemp v. State Compensation Director,* 148 W.Va. 562, 136 S.E.2d 549 (1964), because the statute there provided: "No payment, however, shall be made for [vocational rehabilitation services] . . . unless authorized by the commissioner prior to the rendering of such treatment." *Id.* at 551. Similarly, the court in *City of Broken Arrow v. McArter,* 987 P.2d 448 (Okla.Civ.App.Div.1999), concluded that an after-the-fact approval of vocational rehabilitation services was "without statutory support in our workers' compensation regime." *Id.* at 450. There the statute provided that the compensation agency " 'may, after affording all parties an opportunity to be heard, refer the employee to a qualified physician or facility for evaluation[.]' " *Id.* at 449.

We hold that the absence of notice to the insurer, or to the Commission, and the absence of an opportunity for the insurer to contest Arnstrom's rehabilitation plan prior to its implementation do not deprive the Commission of the power to order reimbursement of reasonable costs. The rule applied by the Florida courts is consistent with the letter and spirit of the Maryland Workers' Compensation Act. That rule does not transfer to the claimant the determination of whether and how rehabilitation should be undertaken. The insurer, absent consent, cannot be ordered to reimburse the claimant for rehabilitation expenses without a hearing. At that hearing the burden is on the claimant to prove that the rehabilitation services

already received were reasonable in all respects, including costs.

■ Here, the Commission conducted a hearing at which the insurer had the opportunity to put the claimant to his proof with respect to the reasonableness of the rehabilitation. The parties, however, were in agreement that rehabilitation was appropriate and that the result had returned Arnstrom to suitable gainful employment. In view of the fact that the rehabilitation services in this case were rendered by or through DORS, the Commission properly could infer, as it did, that the costs were reasonable. The Commission stated: "The State of Maryland supervised it. . . . This was not some fly-by-night [vocational rehabilitation] company or some unknown provider that we've never dealt with before, that we have no confidence in."

IWIF in effect urges this Court to adopt a rule that prejudice is conclusively presumed from the delay after April 1996, when Arnstrom began vocational rehabilitation, to February 2000, when he first formally sought reimbursement on behalf of DORS. In support of this contention IWIF cites *Central GMC, Inc. v. Lagana*, 120 Md.App. 195, 706 A.2d 639, *cert. granted*, 350 Md. 280, 711 A.2d 871, *and cert. dismissed*, 351 Md. 160, 717 A.2d 384 (1998). There we held that a claimant's settlement of a third party claim, without the authorization of the compensation insurer and effected before the compensation claim was filed, operated under the doctrine of election of remedies and under LE §§ 9–101, 9–902(c) and 9–903 to bar the compensation claim. In that context this Court said:

"Rather, the employee has eliminated the possibility of the subrogation right from accruing. The employee has *chosen to exclude the employer* and insurer from participating in the claim against the tort-feasor. The employer is without any standing to intervene in the civil action. The employer and the insurer *are precluded from challenging the employee's course* of medical treatment and time lost from work. The employer is so prejudiced by such action

by the employee that it is only fair to conclude that the employee has elected not to proceed against the employer."

*Id.* at 213–14, 706 A.2d at 649 (footnote omitted).

In *Central GMC* this Court also quoted favorably from Gilbert & Humphreys § 16.1–5 in which the authors discussed the distinction between election of remedies and impairment of subrogation rights. That discussion included the following:

> *"The election of remedies theory bars the claimant from going back for compensation benefits in a case such as this simply because so much water has gone under the bridge that it would be impossible to revisit and challenge these issues at the Commission with any degree of certainty or reliability. In other words, this morass is avoidable but hinges upon the claimant's choice of proceedings."*

*Central GMC,* 120 Md.App. at 209, 706 A.2d at 646.

In the instant matter we are advised that a third party action remains pending so that there has been no impairment of IWIF's subrogation rights. Nor has there been an election of remedies. Arnstrom filed his workers' compensation claim within one month after the date of the accident. IWIF was not precluded from challenging Arnstrom's course of medical treatment or the amount of time lost from work. *Cf. Central GMC,* 120 Md.App. at 213–14, 706 A.2d at 649.

 Nor should prejudice be presumed simply because Commission approval of a rehabilitation plan has not been obtained prior to implementation of the plan. It is not impossible to revisit the relevant issues, as demonstrated by the facts in this case. IWIF has been able to look back, resulting in its agreeing that Arnstrom was entitled to vocational rehabilitation and that the result has been suitable gainful employment. IWIF's only challenges are either that it could have gotten the same successful result cheaper, of which there is no evidence, or that the Commission is not empowered to order reimbursement for vocational rehabilitation where the procedure contemplated in LE § 9–673 has not been followed. We have addressed these contentions above.

Further, the rule which we have adopted does not prevent an insurer from demonstrating that it has been prejudiced in fact by the absence of prior approval of a plan. Conclusively to presume prejudice, however, is contrary to the statute, particularly LE § 9–675. Arnstrom made claim for workers' compensation benefits in February 1995, but IWIF denied that he was a covered employee. It was ultimately determined that he was covered and that he was entitled to temporary total disability benefits for almost two years following his accident. If IWIF had recognized Arnstrom as a covered employee, it would have been required under LE § 9–675(a) to furnish the Commission with a "vocational rehabilitation progress report" as early as June 1995 and to furnish the Commission with "vocational rehabilitation progress reports every 120 days" thereafter. LE § 9–675(b). The beneficent purpose of the Workers' Compensation Act is not served by adopting a conclusive presumption of prejudice when the claim of prejudice arises only because the insurer made the wrong guess on a defense.

Accordingly, we shall reverse.

**JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY REVERSED. CASE REMANDED TO THAT COURT FOR THE ENTRY OF AN ORDER AFFIRMING THE ORDER OF THE WORKERS' COMPENSATION COMMISSION.**

**COSTS TO BE PAID BY THE APPELLEES, EXCALIBUR CABLE COMMUNICATION, LTD. AND INJURED WORKERS INSURANCE FUND.**