670 A.2d 951

**William F. FRANCH et al.**

v.

**Lottie L. ANKNEY et vir.**

**No. 39, Sept. Term, 1995.**

Court of Appeals of Maryland.

Jan. 29, 1996.

Bell, J., dissented and filed opinion.

352

Ronald G. Dawson (Smith, Somerville & Case, L.L.C., on brief), Baltimore, for Petitioner.

Marcus Z. Shar (Bierer, Shar & Allentoff, P.A., Baltimore; Jack J. Schmerling, Glen Burnie, on brief), for Respondent.

Argued before MURPHY, C.J., RODOWSKY, CHASANOW, KARWACKI, BELL, RAKER, JJ., and MARVIN H. SMITH, Judge (retired), Specially Assigned.

CHASANOW, Judge.

The question presented in this appeal is whether the trial judge abused his discretion in striking the testimony of two

expert witnesses in an attorney malpractice case on the ground that the experts' opinions were based on an erroneous interpretation of Maryland law. We hold that the judge's ruling did not constitute an abuse of discretion.

## I.

This appeal stems from an attorney malpractice action brought in the Circuit Court for Anne Arundel County in 1988 by Respondent Lottie Ankney (Ankney) against William A. Franch (Franch), Petitioner, alleging negligence in Franch's representation of Ankney in a workers' compensation claim.[1] The gist of Ankney's complaint is that Franch gave her bad advice regarding the prospects of successfully appealing an unfavorable ruling of the Workers' Compensation Commission (the Commission), and that as a result she failed to pursue an appeal that would have been successful.

Ankney injured her back in January 1982 during the course of her employment at Maritel Enterprises (Maritel). She had been sent to purchase lunch for a meeting. Returning to the office, Ankney slipped and fell on an icy parking lot owned by a third party, Beerfoot Enterprises, Inc. Ankney filed a workers' compensation claim against her employer, Maritel, and in April of 1982 the Commission awarded her compensation for medical expenses associated with the injury plus $177 per week in disability benefits. All benefits were to be paid by her employer's insurance company, Aetna Casualty & Surety Company (Aetna). Ankney's attorney in the original workers' compensation proceeding was Samuel H. Paavola.

According to Ankney, Aetna was slow in paying her medical expenses, and that as a result she suffered financial hardship. After one of her doctors filed suit against her for non-payment of medical bills, Ankney complained about the situation to Paavola. In response, Paavola negotiated a $6,500 settlement with Beerfoot, the owner of the parking lot in which Ankney

---

1. Mrs. Ankney's husband, Walter J. Ankney, was a co-plaintiff in the action against Franch, but his status does not affect this appeal.

had been injured. The settlement was reached without the prior knowledge or approval of Aetna. Part of the settlement was retained by Paavola as attorney fees, and Ankney used the remainder of the money, $4,573.55, to pay part of her medical expenses.

Upon learning from Paavola that Ankney had recovered $6,500 from the parking lot owner, Aetna advised Paavola that it would no longer pay Ankney workers' compensation benefits on the ground that its subrogation interests in the claim against Beerfoot had been prejudiced by the settlement. In fact, Aetna indicated that it was "very surprised" to learn of the settlement with Beerfoot since it was "initially advised that the accident occurred" on property owned by Maritel, Ankney's employer. At some point after the settlement with Beerfoot, Ankney discharged Paavola and retained Franch to represent her. In August of 1984, Franch requested an emergency hearing before the Commission on Ankney's case due to "serious financial problems" she was suffering. At the hearing, Aetna argued that it was no longer liable to pay Ankney any benefits because Ankney had entered into an unauthorized settlement with the third-party tortfeasor, Beer-foot. In an order dated January 29, 1985, the Commission agreed with Aetna and terminated Ankney's benefits from the date of the settlement with Beerfoot.

Shortly after the Commission's ruling, Ankney had discussions with Franch and his law partner, Ronald Jarashow, regarding the possibility of appealing the Commission's ruling. According to Ankney, Franch and Jarashow advised her that she could appeal the decision to circuit court, but that she would have to advance $2,500 to cover costs associated with the appeal and that she would have little chance of prevailing. This advice was apparently based on the view that the unauthorized settlement probably foreclosed Ankney's right to future benefits.[2] Based on the advice of Franch and Jara-

---

2. Prior to the Court of Special Appeals decision in this case, this view was also held by at least one leading authority on Maryland Workers' Compensation Law. *See* RICHARD P. GILBERT AND ROBERT L. HUMPHREYS,

show, Ankney opted not to pursue the appeal.[3] In a letter to Ankney dated February 28, 1985, Franch confirmed that he did "not believe that an appeal could be successful," and therefore "it was mutually agreed that there would be no appeal taken." The time for appealing the commission's decision expired, and Ankney lost her opportunity to challenge the Commission's ruling.

In January of 1988, Ankney filed a malpractice action against Franch and his law firm, Franch, Earnest & Crowdrey, P.A., alleging that the defendants breached the generally accepted standards of care by failing to appeal the Commission's ruling. At trial on the malpractice action in August of 1993, Ankney produced, as expert witnesses, two attorneys who practice in the field of workers' compensation law, Herbert J. Arnold (Arnold) and Harold DuBois (DuBois). Both attorneys testified that, contrary to what Franch advised Ankney, an appeal of the Commission's ruling would have succeeded and would not have involved significant litigation expenses. Both attorneys testified that the Commission erred as a matter of law in terminating Ankney's benefits, and therefore she would have prevailed in the circuit court via a motion for summary judgment. The experts further opined that, in advising Ankney that a circuit court appeal had little chance of success, Franch had breached the duty of care he

---

JR., MARYLAND WORKERS' COMPENSATION HANDBOOK § 16.1–5, at 325 (2d ed. 1993) ("The claimant should not settle the claim 'out from under' the lienholder by reaching a separate accommodation with the third-party tort feasor. Impairment of the employer/insurer's rights by the vehicle of a *de [minimis]* settlement could foreclose the claimant's future rights in worker's compensation proceedings and require a disgorging of the employer/insurer's monetary interest." (Footnote omitted.)). In *Western Maryland Railway Co. v. Assurance Corp.*, 163 Md. 97, 103, 161 A. 5, 8 (1932), we noted " 'an insured cannot settle with the one causing him loss, except with the acquiescence of the insurance company without putting in peril his status with the latter.' " (Citation omitted).

3. Because judgment for Franch was entered at the conclusion of Ankney's case for malpractice, neither Franch nor Jarashow testified at the trial. During his opening statement, however, counsel for Franch contended that the reason Ankney decided not to pursue the appeal was that she did not have the $2,500 for expenses.

owed Ankney, his client, and that that breach had caused Ankney to lose workers' compensation benefits to which she was entitled. DuBois estimated the potential value of the lost benefits at $320,000 plus the value of Ankney's medical expenses related to the injury.

At the conclusion of Ankney's case, Judge Raymond G. Thieme, Jr. granted Franch's motion to strike the testimony of both experts on the ground that the opinions were based on an incorrect interpretation of Maryland law. The trial judge then granted a motion for judgment in favor of Franch on the ground that Ankney had failed to produce any admissible expert testimony establishing the relevant standard of care.[4] Ankney appealed to the Court of Special Appeals. The intermediate appellate court held that the judge's striking of the testimony constituted a "clear abuse of discretion," and remanded the case for retrial. *Ankney v. Franch,* 103 Md.App. 83, 115–16, 652 A.2d 1138, 1153–54 (1995). We granted certiorari.

## II.

Under the Maryland Workers' Compensation Act, Maryland Code (1991 Repl.Vol, 1995 Supp.), Labor and Employment Article (LE), §§ 9–101 through 9–1201,[5] an employer is generally required to pay workers' compensation benefits to an employee who suffers an accidental personal injury in the course of employment, regardless of whether the employer is

---

4. Expert testimony as to the relevant standard of care is necessary in an attorney malpractice case, except in those cases where the common knowledge or experience of laymen is sufficient to allow the fact finder to infer negligence from the facts. *Hooper v. Gill,* 79 Md.App. 437, 441, 557 A.2d 1349, 1351, *cert. denied,* 317 Md. 510, 564 A.2d 1182 (1989), *and cert. denied,* 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). *See also Central Cab Co. v. Clarke,* 259 Md. 542, 551, 270 A.2d 662, 667 (1970) (noting that in some attorney malpractice cases expert testimony is necessary, but holding that expert opinion testimony was not required in a case where the lawyer's conduct was a "clear violation" of the duty of care owed to the client).

5. All statutory references are to Maryland Code (1991 Repl.Vol., 1995 Supp.), Labor and Employment Article (LE).

at fault for the injury. *See* LE § 9–501. Where, as here, the employee's injury resulted from the tortious conduct of a third-party, the statute grants the employer [6] the right to sue the third-party to recover an amount equal to the benefits the employer has been required to pay the employee because of the injury. *See* LE § 9–902(a) and (b); *Erie Insurance v. Curtis,* 330 Md. 160, 164, 623 A.2d 184, 186 (1993). The employer has the exclusive right to pursue a cause of action against the third-party tortfeasor for two months. LE § 9–902(c); *Erie,* 330 Md. at 164, 623 A.2d at 186. Thereafter, the employee also has the right to bring an action against the third-party, but the employer retains subrogation rights in the employee's claim. *Erie,* 330 Md. at 164, 623 A.2d at 186. The employer's subrogation interest in the third-party claim acts as a "statutory lien" on any recovery the employee may obtain from the third-party. RICHARD P. GILBERT AND ROBERT L. HUMPHREYS, JR., MARYLAND WORKERS' COMPENSATION HANDBOOK § 16.1–5, at 325 (2d ed. 1993, 1995 Cum.Supp.). In other words, if the employee recovers compensation from the third-party tortfeasor, the employer is entitled to obtain reimbursement for its workers' compensation payments from the proceeds. *See* LE § 9–902(e). Where recovery from the third party is less than the employee is entitled to receive in benefits, the employee retains the right to recover the difference between the amount received from the third party and the amount payable under the statute. *See* LE §§ 9–902, 9–903; *see also Brocker Mfg. v. Mashburn,* 17 Md.App. 327, 301 A.2d 501 (1973).

▆▆▆ The employer's rights in the claim against the third party are only those derived through the employee. *See Johnson v. Miles,* 188 Md. 455, 459, 53 A.2d 30, 32 (1947). Pursuant to general principles of subrogation law, therefore, if an injured employee settles the claim and releases the third-party tortfeasor from liability, the employer's ability to pursue the claim against the tortfeasor is extinguished. *See Noma*

---

6. For the sake of simplicity, the term "employer" in this section also refers to the employer's insurance carrier. *See* LE § 9–902.

*Elec. Corp. v. Fidel. & Dep. Co.*, 201 Md. 407, 410, 94 A.2d 277, 278 (1953); 6A JOHN ALAN APPLEMAN AND JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4092, at 239 (1972); 16 COUCH ON INSURANCE 2D (REV ED.) § 61:194, at 250–51 (1983). Thus, a *de minimis* settlement between the employee and the tortfeasor could prejudice the employer's interest by depriving the employer of its ability to obtain reimbursement equal to the full value of the third-party claim. *See* MARYLAND WORKERS' COMPENSATION HANDBOOK § 16.1–5, at 325. For example, in the instant case, Aetna may have been prejudiced if Beerfoot was negligent in failing to keep its parking lot free of ice. If Beerfoot's negligence caused Ankney to slip and fall, then under general principles of tort law Beerfoot was liable for the full extent of Ankney's damages. In settling the claim against Beerfoot and releasing it from liability, however, Ankney destroyed Aetna's right to obtain any reimbursement from Beerfoot. Therefore, an employee should notify the employer or insurer when making a claim against a third party and when contemplating any settlement, especially when the settlement is substantially below the amount of workers' compensation benefits paid or payable by the employer/insurer. *See* MARYLAND WORKERS' COMPENSATION HANDBOOK § 16.1–5, at 325; *see also Western Maryland Railway Co. v. Assurance Corp.*, 163 Md. 97, 103–04, 161 A. 5, 8 (1932) (noting that an insured who settles with a third-party tortfeasor without the acquiescence of the insurance company risks forfeiting all money previously recovered by the insured from the insurance company).

The question at the heart of this case is what was the effect of Ankney's unauthorized settlement on Aetna's duty to pay future workers' compensation benefits to Ankney? The Commission ruled that the settlement fully relieved Aetna of its responsibility to pay any benefits after the date of the settlement. The Court of Special Appeals, however, concluded that the Commission's decision to terminate Ankney's benefits was "inconsistent with the legislative intent" of the workers' compensation statute. *Ankney,* 103 Md.App. at 108, 652 A.2d at 1150. The intermediate appellate court held that "an unautho-

rized third-party settlement does not, in itself, constitute grounds for the termination" of benefits. *Ankney,* 103 Md. App. at 109, 652 A.2d at 1150. Rather, the court held, the employer is entitled to reimbursement from the proceeds of the settlement as the statute provides. *Ankney,* 103 Md.App. at 110, 652 A.2d at 1151. *See* LE § 9–902(e). Additionally, the court held that if the employer can establish that it has been *prejudiced* by the settlement, i.e., because the reasonable dollar value of the third-party claim might have been significantly greater than the amount of the actual unauthorized settlement and the settlement was less than the workers' compensation benefits, then the employer is also entitled to a credit for the amount of the prejudice.[7] *Ankney,* 103 Md.App. at 109–10, 652 A.2d at 1151. The court also noted that in cases where the total amount of the credits due the employer because of the unauthorized settlement exceeds the amount of future benefits that would be due the employee, the employee's benefits could be terminated. *Ankney,* 103 Md.App. at 111, 652 A.2d at 1151. *See also* LE § 9–903.[8] We agree with

---

7. Hence, under the holding of the Court of Special Appeals in the present case, Aetna would be entitled to a credit for the amount of the settlement ($6,500) minus attorney fees and costs. Further, if Aetna could demonstrate that the reasonable dollar value of the claim against Beerfoot was greater than $6,500, it would also be entitled to a credit for that amount against its liability to Ankney. *Ankney v. Franch,* 103 Md.App. 83, 110–11, 652 A.2d 1138, 1151 (1995).

8. LE § 9–903 provides:

"(a) *In general.*—Except as provided in subsection (b) of this section, if a covered employee or the dependents of a covered employee receive an amount in an action:

(1) the amount is in place of any award that otherwise could be made under this title; and

(2) the case is finally closed and settled.

(b) *Exception.*—If the amount of damages received by the covered employee or the dependents of the covered employee is less than the amount that the covered employee or dependents would otherwise be entitled to receive under this title, the covered employee or dependents may reopen the claim for compensation to recover the difference between:

(1) the amount of damages received by the covered employee or dependents; and

the above described analysis by the Court of Special Appeals.[9] Indeed, the parties do not contend otherwise.[10]

## III.

We turn to the ruling of the trial judge striking the testimony of Ankney's two expert witnesses, which the Court of Special Appeals held to be an abuse of discretion. As a general rule, expert witnesses may not give opinions on questions of law except for those concerning the law of another jurisdiction. 6 LYNN MCLAIN, MARYLAND EVIDENCE § 702.1, at 219–20 (citing Maryland cases); 1 MCCORMICK ON EVIDENCE § 12, at 50 (John W. Strong ed., 4th ed. 1992). Expert testimony of attorneys is admissible in attorney malpractice cases, however, for the purpose of establishing the standard of care for a reasonable, prudent lawyer in a particular situation. *See Cochrane v. Little*, 71 Md. 323, 333, 18 A. 698, 701 (1889); *Hooper v. Gill*, 79 Md.App. 437, 441, 557 A.2d 1349, 1351, *cert. denied*, 317 Md. 510, 564 A.2d 1182 (1989), *and cert. denied*, 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990). Because an expert opinion on the standard of care in an attorney

---

(2) the full amount of compensation that otherwise would be payable under this title."

9. In reaching its decision, the Court of Special Appeals also held that, had Ankney appealed the Commission's ruling to circuit court, Aetna would not have had the opportunity to litigate the question of the full value of the claim against Beerfoot in circuit court. *Ankney*, 103 Md.App. at 112–13, 652 A.2d at 1152. Because of our holding in Section III of this opinion, *infra*, we find it unnecessary to reach this issue. We stress, however, that we in no way express approval for the Court of Special Appeals' holding with respect to the scope of review of a workers' compensation claim in the circuit court.

10. Franch, the Petitioner, raised in his Petition for Certiorari the propriety of the Court of Special Appeals' holding that the unauthorized settlement did not automatically terminate workers' compensation benefits. Franch did not, however, dispute this holding in his brief to this Court. Ankney did not file a Cross Petition for Certiorari challenging the Court of Special Appeals' holding that the unauthorized settlement entitled the employer to a credit for the amount of the settlement plus any amount it was prejudiced by the settlement. Therefore, the intermediate appellate court's holding on that question is not before us on this appeal.

negligence case is often based upon the expert's interpretation of the law, experts in such cases may state their opinion on the law as a foundation for their opinion on the standard of care.

In the instant case, the testimony of Arnold and Dubois was offered for the purpose of establishing that a reasonable, prudent attorney in Franch's position would have advised Ankney of the probable success of an appeal of the Commission's ruling terminating her benefits. The basis for the testimony given by both experts was their view that, under Maryland law, the only effect of the unauthorized third-party settlement was to entitle Aetna to a credit for an amount equal to that received by Ankney in the third-party settlement. The witnesses testified that, in their opinions, the Commission had erred as a matter of law in terminating Ankney's benefits simply because of the unauthorized settlement. Therefore, the experts testified, Franch was negligent in not advising Ankney to pursue the appeal.

The first expert, Arnold, gave the following testimony:

"[DEFENSE COUNSEL]: Mr. Arnold, you said that you found [the Commission]'s opinion [terminating Ankney's benefits] to have been totally erroneous.

[ARNOLD]: I think it was erroneous.

[DEFENSE COUNSEL]: * * * Aetna had put on evidence that Mr. Paavola had settled the claim with Beerfoot, the third-party, without Aetna's knowledge ... and without Aetna's approval.... Are you saying that that evidence was irrelevant to the—to the issues?

[ARNOLD]: To the final issues in the case, yes. * * * I think that the end result in the case was that Aetna was entitled to a credit for the net amount received by Mrs. [Ankney] against any future [c]ompensation award and nothing more.

＊　　＊　　＊　　＊　　＊　　＊

[DEFENSE COUNSEL]: * * * [I]sn't it the law in Maryland that Aetna could argue, we have been prejudiced by this unapproved settlement and ... [w]e are entitled to more than a credit, we're entitled to the—to a credit for the

extent of our prejudice, not for the extent of what was actually paid?

* * * * * *

[ARNOLD]: No, sir."

The second expert, Dubois, gave a similar opinion as to the effect of the unauthorized settlement. He testified that whether Ankney had settled the case without Aetna's consent was irrelevant, since Aetna would be entitled only to a credit.[11]

In granting Franch's motion to strike the testimony, Judge Thieme ruled:

"I considered [*Western Maryland Railway Co. v. Assurance Corp.*, 163 Md. 97, 161 A. 5 (1932)] as the only authority, at least the guiding authority in—on this case. And I am satisfied that one reading of that case would clearly be that the ... Commission[ ] is right in cutting off the [benefits]. * * * [T]hat would be a logical extension of that case. I also have some problems as to whether that would be the current law. Now, to take the position that the only alternative would be for a credit, I think is just a complete misstatement of the law. I don't accept that. I believe that the insurance company certainly would have a right to show that the actions were ... prejudicial. * * * So, I believe that both Mr. Dubois and Mr. Arnold's opinions are incorrect and I will grant the [m]otion to strike them."

In essence, Judge Thieme ruled that the expert testimony of both Arnold and DuBois was predicated upon a faulty interpretation of Maryland law. Accordingly, he struck the testimony.

---

11. Unlike Arnold, DuBois was not as explicit that Aetna would be entitled only to a credit equal to the amount of the third-party settlement. DuBois did, however, testify that it was irrelevant whether Aetna knew about or consented to the settlement. This testimony carried essentially the same meaning as Arnold's testimony because, were it truly irrelevant whether Aetna consented to the settlement, Aetna would have been entitled to the same credit as if it had consented, i.e., an amount equal to the amount of the settlement. *See* LE § 9-902(e). Hence, Dubois's testimony was based on the same legal interpretation as Arnold's testimony.

It is well-settled that the decision to admit or exclude expert testimony is within the discretion of the trial judge. *Hartless v. State*, 327 Md. 558, 576, 611 A.2d 581, 590 (1992); *Simmons v. State*, 313 Md. 33, 43, 542 A.2d 1258, 1263 (1988); *Franceschina v. Hope*, 267 Md. 632, 636, 298 A.2d 400, 403 (1973). A trial judge's decision to admit or exclude expert testimony will be reversed only if it is founded on an error of law or some serious mistake, or if the judge has abused his discretion. *Hartless*, 327 Md. at 576, 611 A.2d at 590. Further, if an expert's opinion testimony is based upon a premise which is shown to be unsound or faulty, the judge should strike the testimony. *See Evans v. State*, 322 Md. 24, 34–35, 585 A.2d 204, 209 (1991) ("The expert's opinion is of no greater value than the soundness of the reasons given for it will warrant. If no adequate basis for the opinion is shown, the opinion should not be admitted or, if already admitted, should be stricken.") (quoting MARYLAND EVIDENCE § 705.1, at 256–57). *See also State, Use of Stickley v. Critzer*, 230 Md. 286, 290, 186 A.2d 586, 588 (1962) ("[N]o matter how highly qualified the expert may be in his field, his opinion has no probative force unless a sufficient basis to support a rational conclusion is shown.") (footnote omitted). Applying these principles to Judge Thieme's ruling in the instant case, we find no basis for reversing his decision to strike the testimony. The foundation for the testimony of both experts was their belief that any prejudice Aetna may have suffered because of the unauthorized settlement was irrelevant to Aetna's liability to pay benefits. As the opinion of the Court of Special Appeals in this case demonstrated, this interpretation of Maryland law was incorrect. In actuality, Aetna would have been entitled to a credit of $6,500 as well as an amount equal to any prejudice that it could demonstrate it suffered as a result of the unauthorized settlement. *Ankney*, 103 Md.App. at 110, 652 A.2d at 1151. Hence, the amount of prejudice caused by the settlement was relevant. Accordingly, the experts' opinions that Franch's advice was negligent were based upon an unsound premise. The trial judge could reasonably have concluded that this defective premise was material to the admissibility of

the experts' opinions. Therefore, the trial judge did not abuse his discretion in striking the testimony.

The Court of Special Appeals, in finding that the judge abused his discretion, ruled that a judge may not strike expert testimony in a way that is "unduly prejudicial" to a litigant. *Ankney,* 103 Md.App. at 115, 652 A.2d at 1153. The intermediate appellate court apparently found the striking of the testimony in this case "unduly prejudicial" because it left Ankney without any expert testimony, which was necessary to her case. We disagree with this analysis. Trial judges are not barred from striking expert opinions that are based on an unsound or deficient premise simply because those opinions are vital to a party's case. Here, the opinions of both Arnold and DuBois were based on an incorrect interpretation of the law. The judge was therefore fully justified in striking the testimony. Moreover, Franch filed a pre-trial memorandum based on the depositions of both experts, arguing that their testimony should be excluded because their opinions were based on an incorrect interpretation of Maryland law. Accordingly, Ankney was on notice before trial that the basis for the experts' opinions would be challenged by Franch and might be stricken. Nonetheless, Ankney proceeded to offer the testimony, and both experts, consistent with their prior depositions, testified based on an incorrect interpretation of the law. Under these circumstances, we fail to see how Judge Thieme's ruling was "unduly prejudicial." We find no abuse of discretion. Therefore, we reverse the holding of the Court of Special Appeals.

*JUDGMENT OF COURT OF SPECIAL APPEALS RE-VERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY. COSTS TO BE PAID BY THE RESPONDENTS.*

BELL, Judge, dissenting.

I agree with the Court of Special Appeals. *See Ankney v. Franch,* 103 Md.App. 83, 652 A.2d 1138 (1995). Accordingly, I dissent.