706 A.2d 639

**CENTRAL GMC, INC., et al.**

v.

**Deborah A. LAGANA.**

**No. 1028, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

March 3, 1998.

James A. Haynes (William Ober, on the brief), Towson, for appellants.

George Z. Petros, Camp Springs, for appellee.

Argued before DAVIS, THIEME and BYRNES, JJ.

DAVIS, Judge.

Appellants Central GMC, Inc. (GMC) and Injured Workers' Insurance Fund (IWIF) noted this timely appeal from the judgment of the Circuit Court for Prince George's County granting appellee Debra A. Lagana's Motion for Summary

Judgment and denying appellants' Cross–Motion for Summary Judgment. The genesis of the case below was a claim filed by appellee with the Maryland Workers' Compensation Commission (Commission) seeking compensation benefits from appellants for bodily injuries sustained in a motor vehicle accident that occurred on March 1, 1993. The Commission held a hearing on April 27, 1995. The resulting Order, dated May 9, 1995, disallowed the claim, based on a finding that appellee had made a binding election of remedies.

Appellee appealed to the Circuit Court for Prince George's County where she filed a Motion for Summary Judgment. Appellants filed a Cross–Motion for Summary Judgment. Initially, in an Order dated August 26, 1996, the trial court denied both motions without a hearing. In response, the parties filed a Joint Motion to Vacate Order Denying Summary Judgment, which the court granted by an Order dated February 26, 1997. Eventually, the court held a hearing on the competing motions for summary judgment and, in an order dated April 18, 1997, it denied appellants' Cross–Motion for Summary Judgment and granted appellee's Motion for Summary Judgment.

This appeal followed, in which appellants raise two questions for our review, reframed below:

I. Does the unauthorized settlement of an injured employee's claim against a third-party tort-feasor prior to the filing of a workers' compensation claim for the same accident constitute a binding election of remedies so as to preclude the workers' compensation claim?

II. Does the logic of *Franch v. Ankney*, 341 Md. 350, 670 A.2d 951 (1996), apply only when an injured employee settles a claim against a third party after filing a workers' compensation claim for the same accident?

We answer both questions in the affirmative and reverse the judgment of the circuit court.

## FACTS

On the morning of March 1, 1993, appellee sustained bodily injuries in a motor vehicle accident while in the course of employment with appellant GMC. GMC's workers' compensation carrier at the time of the accident was appellant IWIF. When the accident occurred, appellee was on her way to work in a pick-up truck owned by GMC. GMC provided the vehicle to appellee in her position as Assistant Parts Manager for the GMC dealership. Appellee testified that the vehicle was provided "to get [her] back and forth to work as part of [her] salary." The vehicle driven by appellee was struck from behind by a vehicle driven by Tammy Gross. Appellee's vehicle rolled over and she sustained severe bodily injuries that ultimately resulted in the amputation of her left arm.

Immediately after the accident, appellee was taken to the hospital for treatment of her injuries. She was sedated and unconscious for an entire work week. On March 3, 1993, while appellee was still unconscious, GMC submitted the Employer's First Report of Injury, which, according to appellee, correctly stated that she was operating a company vehicle on her way to work at the time of the accident.

Appellant IWIF acknowledged the Employer's First Report of Injury by letter dated March 4, 1993. The letter indicated that appellee was entitled to receive weekly compensation benefits. While appellee was still in the hospital, and without any action on her part, IWIF began to issue temporary total disability checks to appellee.

After sending approximately seven or eight checks, IWIF sent a letter dated May 3, 1993 to GMC with a copy to appellee, advising both of them that IWIF was denying coverage for the accident. The letter stated, in part:

The information received by this office indicates that while the above named was injured, it was not an accidental injury within the meaning of the Workers' Compensation Law.

The Injured Workers' Insurance Fund cannot accept liability as the result of this incident as no compensable

injury was sustained. Treatment for this incident may be covered by private health insurance carriers.

The letter also suggested that GMC and appellee contact the Commission "for further information and guidance" if they disagreed with IWIF's decision. IWIF did not issue any more checks to appellee. Appellee returned all of the previously issued checks to IWIF; she had not negotiated any of them.

After IWIF's denial of coverage, appellee, with the assistance of counsel,[1] pursued a personal injury tort claim against Ms. Gross, the driver of the other motor vehicle involved in the accident (the third party). Ms. Gross's liability insurer, Nationwide Mutual Insurance Company (Nationwide), extended its full policy limits. On or about June 1, 1993, prior to filing a claim with the Commission for any benefits resulting from the accident, and without having filed a suit against the third party, appellee accepted Nationwide's policy limits offer.

After IWIF's denial, appellee also proceeded with an underinsured motorist claim against Motors Insurance Corporation (Motors), GMC's liability insurer. Discovery in that action indicated that appellee's use of the GMC vehicle was a result of it being provided as a condition of her employment. Consequently, appellee determined that IWIF's denial of coverage was in error.

Accordingly, appellee filed a claim with the Commission on October 27, 1994 seeking workers' compensation benefits from GMC and IWIF. In response, and in contrast to its May 3, 1993 denial of coverage, IWIF conceded to the Commission that appellee's claim was an accidental injury, causally connected to her employment. Instead, IWIF contended, as both appellants argue now, that appellee's settlement with Nationwide constituted a binding election of remedies that precluded appellee's workers' compensation claim.

A commissioner disallowed appellee's claim for compensation on May 9, 1995, ruling that she had made a binding

---

1. Approximately two weeks after the accident, appellee retained the services of an attorney to represent her in connection with the accident.

election of remedies. Appellee appealed to the circuit court wherein she and appellants filed competing motions for summary judgment on the issues before this Court. On April 18, 1997, relying on *Franch v. Ankney*, 341 Md. 350, 670 A.2d 951 (1996), the lower court granted summary judgment in favor of appellee, denied appellants' cross-motion for summary judgment, and remanded the matter to the Commission. GMC and IWIF appealed from that decision.

## DISCUSSION

We begin our discussion by setting forth the appropriate standard of review and relevant portions of Maryland's Workers' Compensation statute.

### *Standard of Review*

The standard for appellate review of a trial court's grant or denial of a motion for summary judgment requires us to determine whether the trial court was legally correct. *Heat & Power Corp. v. Air Prods. & Chems., Inc.*, 320 Md. 584, 590–91, 578 A.2d 1202 (1990); *Barnett v. Sara Lee Corp.*, 97 Md.App. 140, 146, 627 A.2d 86, *cert. denied*, 332 Md. 702, 632 A.2d 1207 (1993). In so doing, we review the same material from the record and decide the same legal issues as the circuit court. *Nationwide Mut. Ins. Co. v. Scherr*, 101 Md.App. 690, 695, 647 A.2d 1297 (1994), *cert. denied, Scherr v. Nationwide Mut. Ins. Co.*, 337 Md. 214, 652 A.2d 670 (1995).

Motions for summary judgment are governed by MARYLAND RULE 2–501, which provides that "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." MARYLAND RULE 2–501(e) (1997). *See also Bagwell v. Peninsula Regional Medical Ctr.*, 106 Md.App. 470, 488, 665 A.2d 297 (1995), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996)(holding trial court to same requirements as MD. RULE 2–501). In making its determination, the circuit court must view the facts and all inferences from those facts in the light most favorable

to the non-moving party. *Brown v. Wheeler,* 109 Md.App. 710, 717, 675 A.2d 1032 (1996).

When the underlying facts are undisputed, but produce more than one permissible inference, the choice between those inferences should not be made by the court as a matter of law, but should be submitted to the trier of fact. *Fenwick Motor Company v. Fenwick,* 258 Md. 134, 138, 265 A.2d 256 (1970).

## Suits Against Third–Party Tort-feasors under Maryland's Workers' Compensation Statute

With the standard of review firmly in place, we now set forth, in relevant part, MD.CODE (1991 Repl.Vol.), LABOR AND EMPLOYMENT (LE), §§ 9–901, 9–902, and 9–903 (portion of Maryland's workers' compensation statute that governs actions against third-party tort-feasors). We cite to these sections throughout our discussion because the language of the statute and the intent of its drafters are key to our analysis.

§ 9–901. Choice of proceeding against third party or employer.

When a person other than an employer is liable for the injury or death of a covered employee for which compensation is payable under this title, the covered employee or, in case of death, the personal representative or dependents of the covered employee may:

(1) file a claim for compensation against the employer under this title; or

(2) bring an action for damages against the person liable for the injury or death or, in case of joint tort[-]feasors, against each joint tort[-]feasor.

§ 9–902. Action against party after award or payment of compensation.

(a) *Action by self-insured employer, insurer, or fund.*—If a claim is filed and compensation is awarded or paid under this title, a self-insured employer, an insurer, the Subsequent Injury Fund, or the Uninsured Employers' Fund may bring an action for damages against the third party who is liable for the injury or death of the covered employee.

(b) *Recovery of damages exceeding compensation and other payments.*—If the self-insured employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund recovers damages exceeding the amount of compensation paid or awarded and the amount of payments for medical services, funeral expenses, or any other purpose under Subtitle 6 of this title, the self-insured employer, insurer, Subsequent Injury fund, or Uninsured Employers' Fund shall:

(1) deduct from the excess amount its costs and expenses for the action; and

(2) pay the balance of the excess amount to the covered employee or, in case of death, the dependents of the covered employee.

(c) *Action by covered employee or dependents.*—If the self-insured employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund does not bring an action against the third party within 2 months after the Commission makes an award, the covered employee or, in the case of death, the dependents of the covered employee may bring an action for damages against the third party.

(d) *Limitations period.*—The period of limitations for the right of action of a covered employee or the dependents of the covered employee against the third party does not begin to run until 2 months after the first award of compensation made to the covered employee or the dependents under the title.

(e) *Distribution of damages.*—If the covered employee or the dependents of the covered employee recover damages, the covered employee or dependents:

(1) first, may deduct the costs and expenses of the covered employee or dependents for the action;

(2) next, shall reimburse the self-insured employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund for:

(i) the compensation already paid or awarded; and

(ii) any amounts paid for medical services, funeral expenses, or any other purpose under Subtitle 6 of this title; and

(3) finally, may keep the balance of the damages recovered.

. . .

§ 9–903.  Effect of receipt of amount in action.

(a) *In general.*—Except as provided in subsection (b) of this section, if a covered employee or the dependents of a covered employee receive an amount in an action:

(1) the amount is in place of any award that otherwise could be made under this title;  and

(2) the case is finally closed and settled.

(b) *Exception.*—If the amount of damages received by the covered employee or the dependents of the covered employee is less than the amount that the covered employee or dependents would otherwise be entitled to receive under this title, the covered employee or dependents may reopen the claim for compensation to recover the difference between:

(1) the amount of damages received by the covered employee or dependents;  and

(2) the full amount of compensation that otherwise would be payable under this title.

**I**

Appellants argue that the trial court erred in granting summary judgment in favor of appellee by misconstruing and misapplying the applicable workers' compensation law regarding the election of remedies and the impairment of subrogation interests as those subjects apply to actions against third parties.  Specifically, appellants aver that the plain and unambiguous language of LE § 9–901 requires that an injured employee elect whether to pursue a tort remedy against a third party or to pursue a workers' compensation remedy against the employer.  Appellants argue that *Franch* is distin-

guishable from the case at bar because, in *Franch,* the unauthorized settlement of the third-party suit came *after* the workers' compensation claim was filed. In the instant case, the third-party suit was settled before the filing of the workers' compensation claim. Appellants contend, therefore, that *Franch* did not address election of remedies but, rather, it discussed the impairment of subrogation interests. Consequently, appellants conclude that the trial court's reliance on *Franch* was misplaced.

By contrast, appellee claims that the express language of LE § 9–903 provides a mechanism for recovery by an injured worker from both the worker's employer and a third-party tort-feasor. Appellee asserts that the statutory basis for such recovery is LE § 9–901, which, as appellants assert, provides for recovery from either the employer or the tort-feasor. Contrary to appellants' restrictive view of LE § 9–901, however, appellee contends that the two avenues are not mutually exclusive. Appellee also relies on case law that holds that simply bringing suit against a third-party tort-feasor before filing a claim under the workers' compensation statute does not constitute a binding election barring the claim for compensation. Appellee misses the point.

The pivotal question in this case is whether reaching an *unauthorized settlement* in an action against a third party *before* the filing of a workers' compensation claim constitutes a binding election of remedies. We hold that it does. Agreeing with the gravamen of appellants' thesis, we explain.

The purpose of workers' compensation statutes is to insure that employees who are injured while performing activities that benefit their employer will be compensated without regard to the fault of the employer. The employee, therefore, would not be left without a remedy when injured through no fault of the employer. The employer benefits by avoiding the disruption of business by burdensome lawsuits. A clearly stated policy of workers' compensation statutes, including Maryland's statute, LE § 9–901 *et seq.,* is "to carry out a beneficent purpose and to vest liberally in employees, injured

during or in the course of their employment, benefits pursuant to a preset schedule according to the degree and duration of physical impairment." *Ankney v. Franch (Ankney),* 103 Md. App. 83, 91, 652 A.2d 1138 (1995), *rev'd on other grounds, Franch v. Ankney (Franch),* 341 Md. 350, 670 A.2d 951 (1996).

The benevolent objective of workers' compensation statutes is the polar principle in determining the rights of the parties. *Ankney* presented the issue of how to achieve the beneficent purpose of the Maryland statute without impinging upon an employer's right to be reimbursed by a third party who has caused injury. Although reversing on other grounds in *Franch,* the Court of Appeals affirmed our reasoning on the issue. As noted by the trial court here, however, the instant case "is one step beyond *Franch (Ankney)."*

In *Ankney,* the injured claimant negotiated an unauthorized settlement after filing a workers' compensation claim and receiving workers' compensation benefits. We held that the termination of an employee's benefits by the Commission without any showing that the employer's insurer had suffered material prejudice as a result of the employee's settlement with a third party was plainly inconsistent with the legislative intent underlying LE § 9–903, as well as the broader statutory goal of providing full compensation for injured employees. *Ankney,* 103 Md.App. at 109–10, 652 A.2d 1138, *rev'd on other grounds,* 341 Md. 350, 670 A.2d 951 (1996). We held further that, in cases when material prejudice to an employer because of an employee's unauthorized settlement with a third party is shown, the employer is entitled to a credit for the amount of the prejudice. *Id.* The employee's claim may not be abated on account of the prejudice unless the amount of the unauthorized settlement, plus the amount of any prejudice shown, is equal to or greater than the compensation awarded. *Id.*

Additionally, we stated that, when the employer cannot show prejudice because of an employee's unauthorized settlement, the proceeds of the unauthorized settlement must be distributed according to the terms of the workers' compensation statutes. Specifically, the employer would be entitled to

reimbursement from the proceeds, and the claim would not be terminated or suspended if the sum of the credits to the employer is less than the compensation that the employee would otherwise be entitled to receive.

To supplement our analysis, we include the Court of Appeals's summary of the relevant workers' compensation law from *Franch:*

> Under the Maryland Workers' Compensation Act, an employer is generally required to pay workers' compensation benefits to an employee who suffers an accidental personal injury in the course of employment, regardless of whether the employer is at fault for the injury. Where, as here, the employee's injury resulted from the tortious conduct of a third-party [sic], the statute grants the employer the right to sue the third-party [sic] to recover an amount equal to the benefits the employer has been required to pay the employee because of injury. The employer has the exclusive right to pursue a cause of action against the third-party tort[-]feasor for two months. Thereafter, the employee also has the right to bring an action against the third-party [sic], but the employer retains subrogation rights in the employee's claim. The employer's subrogation interest in the third-party claim acts as a "statutory lien" on any recovery the employee may obtain from the third party. In other words, if the employee recovers compensation from the third-party tort[-]feasor, the employer is entitled to obtain reimbursement for its workers' compensation payments from the proceeds. Where recovery from the third party is less than the employee is entitled to receive in benefits, the employee retains the right to recover the difference between the amount received from the third party and the amount payable under the statute.
>
> The employer's rights in the claim against the third party are only those derived through the employee. Pursuant to general principles of subrogation law, therefore, if an injured employee settles the claim and releases the third-party tort[-]feasor from liability, the employer's ability to pursue the claim against the tort[-]feasor is extinguished.

Thus, a *de minimis* settlement between the employee and the tort[-]feasor could prejudice the employer's interest by depriving the employer of its ability to obtain reimbursement equal to the full value of the third-party claim. . . . Therefore, an employee should notify the employer or insurer when making a claim against a third party and when contemplating any settlement, especially when the settlement is substantially below the amount of workers' compensation benefits paid or payable by the employer/insurer.

*Franch,* 341 Md. at 357–59, 670 A.2d 951 (citations and footnotes omitted). *See also Western Maryland Railway Co. v. Employers' Liability Assurance Corp.,* 163 Md. 97, 102–04, 161 A. 5 (1932) (noting that an insured who settles with a third-party tort-feasor without the acquiescence of the insurance company risks forfeiting all money previously recovered by the insured from the insurance company).

As stated *supra,* the instant case should be distinguished from *Franch.* The question at the heart of this case is what was the effect of appellee's unauthorized settlement with the third-party tort-feasor on her ability to bring a *subsequent* workers' compensation claim. We are persuaded that appellee's unauthorized settlement constituted a binding election of remedies.

Before *Ankney,* at least one prominent Maryland authority on Maryland Workers' Compensation Law believed as we hold today. See Richard P. Gilbert and Robert L. Humphreys, Jr., MARYLAND WORKERS' COMPENSATION HANDBOOK, § 16.1–2 at 323 (2d ed.1993), which provides:

§ 16.1–2. Claimant's Election of Remedies.

When a worker's injury raises the specter of third[-]party liability, the employee may either:

1. pursue remedy under the Act and then seek civil redress from the third[-]party tort-feasor; or

2. bring a civil action against the third party.

When the worker undertakes a civil suit against the third-party tort[-]feasor and pursues the action to a conclusion, the employee is said to have "elected" the remedy. The

employee may not thereafter apply for workers' compensation benefits, regardless of whether the civil suit was successful.[2]  Mere filing of a civil action prior to an application for benefits under the Act does not constitute an election.[3]

We believe that this is a correct statement of the law.  The logic of *Ankney* and *Franch* does not apply until after a workers' compensation claim has been filed—in other words, after the accrual of the employer's subrogation interest.  Most telling on the distinction between election of remedies and impairing subrogation interests is another excerpt from the Maryland Workers' Compensation Handbook.  The excerpt was written after *Franch:*

§ 16.1–5.  Impairing the Subrogation Interest.

. . .

A distinction should be noted between an election of remedies and impairing the subrogation interest.  A finding that an election has taken place bars the claimant from obtaining workers' compensation benefits.  Impairing the subrogation interest has the effect of reducing the compensation benefits payable to the claimant.

An election defense requires proof that the claimant's actions against the third party operated to foreclose the rights of the employer/insurer against the tort[-]feasor.  In its most basic sense, election means choice.  If the claimant has chosen to move solely against the tort[-]feasor, the claimant is deemed to have foreclosed his right to workers' compensation.  Consider for example that Claimant *A* sustains an injury compensable under the Act. No claim for workers' compensation benefits is filed.  No medical bills are submitted to the employer/insurer for payment.  No claim is presented for temporary total disability.  The claimant files suit against the tort[-]feasor.  As damages in the action against the tort[-] feasor, Claimant *A* introduces

---

2.  Citing *Johnson v. Miles*, 188 Md. 455, 53 A.2d 30 (1947).

3.  Citing *Perdue v. Brittingham*, 186 Md. 393, 47 A.2d 491 (1946).

medical bills unregulated by the Commission's fee guide. The suit is settled. Claimant *A* cannot then file a claim for workers' compensation benefits due to an election of remedies. Proceeding as she did, Claimant *A* shut out the employer/insurer from any participation in her suit against the tort[-]feasor. No compensation benefits were requested nor paid by the employer/insurer through the time that the civil action was settled. The employer/insurer were therefore without any standing to participate or intervene. During the pendency of the civil action their liability for the payment of workers' compensation was merely prospective. Without a claim being made against them they had no ability to review the reasonableness of the claimant's course of medical treatment. They had no right to obtain their own medical examination of the claimant. They were precluded from challenging the claimant's time lost from work. Even if the employer/insurer knew what Claimant *A* was doing vis-a-vis the tort[-]feasor, they were helpless to intervene because of their lack of standing. *The election of remedies theory bars the claimant from going back for compensation benefits in a case such as this simply because so much water has gone under the bridge that it would be impossible to revisit and challenge these issues at the Commission with any degree of certainty or reliability. In other words, this morass is avoidable but hinges upon the claimant's choice of proceedings.*

Contrasting subrogation interest, the treatise continues:

Impairing the subrogation interest is different from an election. When for example Claimant *B* files a civil suit against the tort[-]feasor and simultaneously applies for workers' compensation benefits, the employer/insurer obtains a degree of protection. They are put on notice of the claim. They obtain the right to challenge medical treatment, lost time and so on. They may obtain their own medical examinations to monitor medical progress and exposure for benefits. Their exposure becomes actual rather than potential. *A subrogation interest subject to statutory protection arises.* After the civil action is decided or other-

wise settled, the questions to be addressed are whether the claimant's action impaired the subrogation interest and to what extent. Arguably, findings may range from no impairment whatever, to impairment foreclosing a right to benefits, or (and more likely) something in between.

Does the employer/insurer possess a subrogation interest if they paid workers' compensation benefits for an injury in which the employee did not file a claim with the Commission? The answer is, perhaps. A Commission rule governs the payment of benefits when no claim has been filed. An employee/insurer should not pay "compensation" (i.e.: temporary total disability benefits, permanent partial disability benefits, etc. ) unless a claim has been filed. The rationale behind this rule is to prevent a claimant from being lulled into not filing a claim and later being hit with a statute of limitations defense. The same rule, however, allows the employer/insurer to pay or not to pay medical charges regardless of whether a claim has been filed. The reason for this portion of the rule is twofold. It avoids the expense, delay, and administrative costs entailed by a blanket order which might require the filing of a claim before the payment of medical charges. On occasion, it may also facilitate or streamline an employee's medical treatment. It is suggested that, when the employer/insurer has observed the rule, payments for medical charges create a statutorily protected subrogation interest. Since payments are for treatment attributable to an employment injury and the rule on payments was observed, no interest is served by denying that a subrogation interest exists.

Gilbert and Humphreys, MARYLAND WORKERS' COMPENSATION HANDBOOK § 16.1–5, pp. 46–47 (Supp.1997) (emphasis added).

As we noted in *Ankney,* 103 Md.App. at 104, 652 A.2d 1138, Maryland's workers' compensation statute is silent as to the consequences of an unauthorized settlement (without employer's consent) on the viability of a claim for workers' compensation benefits. After a detailed discussion of relevant case law from various states, we undertook the task of determining the meaning and intent of our own statute in order to give full

effect to its legislative purpose and policy. See *Ankney*, 103 Md.App. at 104–05, 652 A.2d 1138 (citing *Privette v. State*, 320 Md. 738, 744–45, 580 A.2d 188 (1990) and *Tracey v. Tracey*, 328 Md. 380, 387–88, 614 A.2d 590 (1992)). We do the same in the instant case.

■ The express language of the statute is the primary guide to legislative intent. *Tracey*, 328 Md. at 387, 614 A.2d 590. We believe the language of the statute and, accordingly, the legislative intent behind the statute support our holding. Our reading of the statute indicates that the legislature intended that suits against third parties not be concluded without the consent of the employer, especially before a workers' compensation claim has been filed. Indeed, LE § 9–902 expressly provides for the recovery of damages against a third party *after* an award or payment of workers' compensation. There is no section expressly providing for the recovery of damages against a third party *before* the filing of a workers' compensation claim.

Additionally, LE § 9–903(a) expressly states that, if a covered employee receives an amount in an action against a third party, "the amount is in place of any award that otherwise could be made under this title; and ... *the case is finally closed and settled.*" (Emphasis added). Consequently, that section infers a binding election. The only exception, which is embodied in LE § 9–903(b), contemplates a situation in which the workers' compensation claim was filed *prior* to receiving an amount in termination of the action. Indeed, LE § 9–903(b) allows a covered employee to "*re* open" a claim for compensation, thereby indicating that the legislature intended the exception to apply when claims were filed prior to the conclusion of suits against third parties.

We agree, therefore, with appellants that the trial court's granting of appellee's motion for summary judgment was legally incorrect as it was based upon the misconception that the logic of *Franch* applied to the instant case. This misconception was apparently based on the lower court's mistaken

belief that "election of remedies" and "impairment of the subrogation interest" are coextensive.

Indeed, the circuit court explicitly relied on *Franch* in granting appellee's motion for summary judgment, stating:

All they held in *Franch,* and all I'm holding in this case, is that the Employer still has a subrogated right to deduct from any payments payable to or due in the future to the Employee those sums that could have been recovered from the third-party tort[-]feasor less ... counsel fees ... together with any other sum that could have been [re]covered, the so-called prejudice factor.

. . .

Accordingly, Madam Clerk, [appellee's] motion for summary judgment is granted. [Appellants'] motion for summary judgment is denied.

Such reliance on *Franch* was misplaced, as the Court of Appeals did not address election of remedies in that case. Rather, it addressed the effect of the impairment of the employer's subrogation interest that accrued *after* the filing of the workers' compensation claim as provided for by LE § 9–902 (providing for actions against third parties after the award or payment of compensation).

██ Pursuant to the clear, unambiguous language of LE § 9–902, an employer's/insurer's right of subrogation does not exist *until after a claim is filed* with the Commission. Our review of the proceedings in the lower court indicate that the trial court failed to appreciate this.

THE COURT: After the denial, which is about two months after the accident, during which time unquestionably the Insurer had the exclusive right, if it acknowledged the claim, to pursue the claim, the third-party claim on behalf of the Employee. Nobody disputes that.

. . .

It had the exclusive right to pursue the cause of action for two months, and that's not in dispute.

. . .

The reason the Employer/Insurer is given the rights is because the Employer/Insurer has the right to recoup and recover.

So in the first 60 days it has the right to recoup and recover any expenses it pays to its Employee. After that, it still has a subrogated right to any moneys that the Employee recovers.

. . .

[APPELLANTS' COUNSEL]: Is the Court holding that the Employer has the exclusive right for 60 days after the accident[?][B]ecause it's my understanding the Employer has no right to do anything against the third party until the Claimant files the [workers' compensation] claim.

THE COURT: You are undoubtedly correct, but it wouldn't make any difference in the decision, in the final analysis under *Franch*, because I hold that your client is entitled to recoup whatever was recovered, less reasonable expenses and what Judge Chasanow referred to as the prejudice factor.

It is clear that the lower court believed that appellants' subrogation rights had already accrued at the time appellee settled her third-party claim. That belief was in error. It was that erroneous belief that led the lower court to apply the *Franch* logic which balances the employer's/insurer's right to subrogation against the employee's right to be compensated. When, however, the employee settles a claim against a third party before the filing of a workers' compensation claim, the employer's right to subrogation has not accrued, pursuant to LE § 9–902, and therefore it could not have been destroyed.

Rather, the employee has eliminated the possibility of the subrogation right from accruing. The employee has *chosen to exclude the employer* and insurer from participating in the claim against the tort-feasor. The employer is without any standing to intervene in the civil action.[4] The employer and

---

4. Indeed, in this case the unauthorized settlement came before any action against the third party was filed.

the insurer *are precluded from challenging the employee's course* of medical treatment and time lost from work. The employer is so prejudiced by such action by the employee that it is only fair to conclude that the employee has elected not to proceed against the employer. In support of this view is § 9–902(c) which provides for a two-month period after the Commission makes an award within which the employer, insurer, Subsequent Injury Fund, or Uninsured Employers' Fund is authorized to bring an action for damages against the third party. This provision allows the employer/insurer to pursue full reimbursement from the third party, thereby reducing employer's liability for payment of the awards.

In opposing appellants' position, appellee relies heavily on case law that holds that "bringing suit against a third-party tort-feasor before filing a claim under the workers' compensation statute does not constitute a binding election barring the claim for compensation." While this is an accurate statement of the law, it does not address, much less resolve, the issue presented by the facts of this case. As stated *supra*, the conclusion by unauthorized settlement of an action against a third-party tort-feasor before the filing of a claim under the workers' compensation statute does constitute a binding election of remedies barring a future claim for compensation.

Appellee's argument that LE § 9–903 provides for a mechanism for recovery by an injured worker from both the worker's employer and a third-party tort-feasor is misguided. The general rule, as stated in LE § 9–903(a), provides that an amount received from an action against a third party takes the place of any award that could be made under the Maryland workers' compensation title. Appellee relies on LE § 9–903(b)'s exception to the general rule. As we stated above, however, the language of that section clearly indicates that it applies only to situations in which a workers' compensation claim was filed before the third-party action was concluded. Specifically, the exception allows a covered employee to "*re-open*" a workers' compensation claim if the amount of damages received by the covered employee from the action is less than the amount that the employee would otherwise be enti-

tled to under the title. Additionally, when considering LE § 9–903 in the context of its relation to LE §§ 9–901 and 9–902, we must conclude that the Legislature intended unauthorized settlements of third-party actions before the filing of a claim for workers' compensation to constitute a binding election of remedies.

Finally, appellee argues that IWIF''s denial of coverage of her workers' compensation claim "constituted a substantial breach of contract" because "[IWIF] knew or was on inquiry notice that the well-established 'employer-provided-transportation rule' placed this accident within the course of [appellee's] employment, making her injuries compensable." Appellee contends that, by that breach of contract, IWIF forfeited any right to participate in the third-party claim.

In support of that position, appellee relies on cases dealing with the consent to sue clauses that were included in uninsured motorist endorsements in Maryland motor vehicle liability insurance policies. Appellee does not cite cases regarding workers' compensation. Instead, she analogizes the situation of uninsured motorist coverage in a policy of automobile insurance with the instant workers' compensation case wherein there is no contract between IWIF and appellee. Rather, the contract that was allegedly breached in this case is between GMC and IWIF. Consequently, appellee's breach of contract argument must fail.

In accordance with our holding with regard to the granting of appellee's motion for summary judgment, we hold that it was error as a matter of law to deny appellants' motion for summary judgment, there being no genuine dispute as to the material facts.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED; CASE REMANDED WITH INSTRUCTIONS TO ENTER JUDGMENT IN FAVOR OF APPELLANTS.**

**COSTS TO BE PAID BY APPELLEE.**